THE STATE OF OHIO, APPELLEE, *v*. LLOYD, APPELLANT.

[Cite as *State v. Lloyd,* 132 Ohio St.3d 135, 2012-Ohio-2015.]

*Criminal law—Sex offenders—R.C. 2950.04(A)(4)—Duty to register based on out-of-state conviction for sexually oriented offense—Offense of failure to register—Prosecution must prove that defendant had duty to register in state where offense was committed—conviction for failure to register reversed.*

(No. 2011-0212—Submitted December 6, 2011—Decided May 8, 2012.)

APPEAL from the Court of Appeals for Holmes County,

No. 09 CA 12, 2010-Ohio-6562.

_____

**O'CONNOR, C.J.**

{¶ 1}   In this appeal, we explain the analysis that a court must undertake in determining (1) whether an out-of-state conviction is a sexually oriented offense that triggers a duty to register in Ohio and (2) the sanction for failure to register in Ohio based on a duty that arises from an out-of-state conviction.  For the reasons explained herein, we hold that the offense for which appellant Wesley Lloyd was convicted in Texas, aggravated sexual assault, is a sexually oriented offense under Ohio law because it is substantially equivalent to rape, a listed Ohio offense.  *See* R.C. 2950.01(A)(11).  Because rape in Ohio is a first-degree felony, a violation of Lloyd's registration duties would also constitute a first-degree felony.  *See* R.C. 2950.99(A)(1)(a)(ii).  Accordingly, we approve those portions of the court of appeals' opinion that reflect that holding.

{¶ 2}   But we must set aside Lloyd's convictions because the state failed to prove that at the time he moved to Ohio, Lloyd was under a duty to register in

Texas as a result of his conviction for aggravated sexual assault, as required by R.C. 2950.04(A)(4). We hold that the decision of the court of appeals to affirm Lloyd's convictions in the face of this plain error was improper and must be reversed.

## FACTS AND PROCEDURAL HISTORY

{¶ 3} On December 8, 1995, Wesley Lloyd was convicted in Texas of aggravated sexual assault and was sentenced to seven years' imprisonment. In the fall of 2005, Lloyd moved to Auglaize County, Ohio, and began registering as a sexually oriented offender.

{¶ 4} In 2008, Lloyd received notice from the Ohio Attorney General that he was reclassified as a Tier III sex offender, which required increased periodic registration. Lloyd continued registering. He last registered in Auglaize County on May 19, 2008.

{¶ 5} On June 2, 2008, Lloyd moved to Holmes County, Ohio. On June 12, 2008, Lloyd was arrested by Holmes County authorities pursuant to a warrant for failure to register in Holmes County.

{¶ 6} On April 7, 2009, a bench trial commenced on the following charges: (1) failure to register with the Holmes County Sheriff within three days of moving to Holmes County, in violation of R.C. 2950.04(E), (2) failure to provide written notice to the Holmes County Sheriff of intent to reside in Holmes County at least 20 days before moving, in violation of R.C. 2950.04(E), and (3) failure to provide written notice to the Auglaize County Sheriff of intent to reside in Holmes County at least 20 days before moving, in violation of R.C. 2950.05(F)(1).

{¶ 7} Lloyd was convicted on all counts and was sentenced to three years' imprisonment on each count, to be served concurrently.

*The Fifth District Litigation*

**{¶ 8}** On appeal, the Fifth District Court of Appeals vacated Lloyd's conviction on the charge of failure to provide 20 days' notice to the Holmes County Sheriff. *State v. Lloyd*, 5th Dist. No. 09 CA 12, 2010-Ohio-6562, at ¶ 18-20. It reasoned that pursuant to our decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, Lloyd was required to register in accordance with Megan's Law, not the Adam Walsh Act, and the duty to give advance notice to the sheriff in the county to which one moves arises only under the Adam Walsh Act. The court of appeals affirmed the remaining two convictions and reasoned, in part, that the Adam Walsh Act did not affect Lloyd's registration requirements under those provisions.[1]

**{¶ 9}** In so doing, the Fifth District rejected Lloyd's argument that his convictions violated due process because he was not required to register as a sex offender in Ohio. *Id.* at ¶ 21. The appellate court concluded that the Texas offense of aggravated sexual assault is substantially equivalent to rape in Ohio and, therefore, Lloyd was required to register. *Id.* at ¶ 35. The Fifth District also rejected Lloyd's argument that his convictions for first-degree felonies violated due process because they, in fact, constituted third-degree felonies. *Id.* at ¶ 37. Lloyd's argument to the Fifth District was that, if anything, aggravated sexual assault as defined in Texas constitutes sexual battery, a third-degree felony, if committed in Ohio. *Id.*

**{¶ 10}** Lloyd unsuccessfully attacked his convictions on numerous other grounds. Importantly for purposes here, the Fifth District rejected Lloyd's due process argument that targeted the state's failure to offer any evidence whatsoever that Lloyd was under a duty to register in Texas at the time he moved to Ohio. *Id.*

---

1. Because we find that Lloyd's convictions are infirm on unrelated grounds, we need not and do not in any way decide the propriety of the court of appeals' decision to affirm his convictions under Megan's Law when he was prosecuted under the Adam Walsh Act. That legal issue is currently before us in 2011-1066, *State v. Brunning*, Eighth Dist. No. 95376, 2011-Ohio-1936.

at ¶ 85-86 and 89-91. The Fifth District held that other evidence—namely, Lloyd's testimony in his own defense, which came after the trial judge denied Lloyd's first Crim.R. 29 motion—was sufficient to prove that element. *Id.* at ¶ 86 and 91.

{¶ 11} We accepted jurisdiction over Lloyd's discretionary appeal. *State v. Lloyd*, 128 Ohio St.3d 1481, 2011-Ohio-2055, 946 N.E.2d 239.

### QUESTION PRESENTED

{¶ 12} The sole proposition of law before us asserts: "A court should conduct an elemental comparison of an out-of-state offense when determining 1) whether the offense triggers the duty to register in Ohio under R.C. 2950.01 and 2) the punishment for failing to register in Ohio under R.C. 2950.99." We will address each prong in turn.

### ANALYSIS

*Duty to Register in Ohio under R.C. 2950.01*

{¶ 13} In all prosecutions under Ohio's sex-offender-registration laws, the state must prove that the defendant had been convicted of a sexually oriented offense that triggered a duty to register. Certain offenders who commit sexually oriented offenses out of state are subject to registration in Ohio. R.C. 2950.04(A)(4). An out-of-state conviction is a sexually oriented offense under Ohio law if it is or was substantially equivalent to any of the Ohio offenses listed in R.C. 2950.01(A)(1) through (10). R.C. 2950.01(A)(11).

{¶ 14} The legislature did not explain the analysis that courts must undertake in determining whether an out-of-state offense is "substantially equivalent" to a listed Ohio offense. We must, therefore, determine what the statute permits. In doing so, we are mindful that we must look to the statutory language itself and the purpose to be accomplished by the statutory scheme. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, at ¶ 12, citing *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419,

704 N.E.2d 1217 (1999). First, we will discuss the federal modified-categorical approach to analyzing prior convictions, which we find instructive.

*The federal modified-categorical approach*

{¶ 15} In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the United States Supreme Court explained the meaning of the word "burglary" as it was used in a sentence-enhancement statute and explained the analysis that federal courts must undertake in determining whether a state conviction is a burglary that triggers the enhancement. *Id.* at 577-578 and 602. The federal criminal code, which prohibits the possession of firearms by certain individuals, including felons, contains a separate sentence-enhancement provision that is commonly known as the Armed Career Criminal Act ("ACCA"). The ACCA provides for a mandatory minimum sentence of 15 years' imprisonment for defendants found guilty of unlawful possession of a firearm if they have three previous convictions of a violent felony. 18 U.S.C. 924(e)(1). The undefined term "burglary" is listed in the relevant definition of "violent felony." 18 U.S.C. 924(e)(2)(B)(ii). The court recognized that Congress had singled out the offense of burglary as an offense of violence because of its inherent potential harm to persons. *Taylor* at 588. But burglary has many definitions, including one at common law. *Id.* at 580 (explaining that " 'burglary' has not been given a single accepted meaning by the state courts; the criminal codes of the States define burglary in many different ways").

{¶ 16} The court characterized its task, in part, as discerning whether Congress intended "burglary" to mean "whatever the State of the defendant's prior conviction defines as burglary, or whether it intended that some uniform definition of burglary be applied." *Id.*

{¶ 17} The court looked to the evolution of the enhancement statute over time and noted that the enhancement "always has embodied a categorical approach to the designation of predicate offenses," as evidenced by the original

provision's inclusion of a definition of burglary. *Id.* Because amendments carried forward the categorical approach, the court concluded that Congress had intended to capture "all crimes having certain common characteristics * * * regardless of how they were labeled by state law." *Id.* at 589.

{¶ 18} In so holding, the court rejected as implausible the argument that Congress intended the meaning of "burglary" to depend on the definition adopted by the state of the prior conviction because "[t]hat would mean that [the sentence enhancement] would, or would not, [apply] * * * based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.' " *Id.* at 590-591.

{¶ 19} The court also rejected the defendant's argument that the common-law definition applies because it had been abandoned by most states and would, therefore, result in an unnaturally narrow reading of the statute. *Taylor,* 495 U.S. at 593-595, 110 S.Ct. 2143, 109 L.Ed.2d 607. In doing so, the court acknowledged that federal law requires sentencing provisions to be construed in favor of the accused, but explained that "[t]his maxim of statutory construction * * * cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." *Id.* at 596, citing *Perrin v. United States*, 444 U.S. 37, 49, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), fn. 13. The court concluded that Congress had intended for the generic definition of burglary to apply. *Id.* at 598.

{¶ 20} There remained the problem of applying the generic definition when the state statute under which a defendant had been convicted varies from the generic definition. *Id.* at 599. The court considered a strict elemental comparison and noted that if the state statute is narrower than the generic view or the same as the generic view with only minor variations in terminology, "there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary." *Id.*

**{¶ 21}** Some state statutes, however, are broader than the generic view. The court gave the example of a burglary statute that includes unlawful entry into automobiles as well as buildings. A court may look beyond the statutory definition and rely on a limited portion of the record—the indictment, the information, and the jury instructions—in a narrow class of cases where the defendant's previous conviction was necessarily based on conduct that falls within the generic definition of burglary. *Id.* at 602. If, based on a review of those documents, the court finds that the offense involved burglary of a building, and the jury had to find entry into a building in order to convict, the sentence enhancement would apply. *Id.*

**{¶ 22}** Recognizing that predicate convictions stem not only from jury trials but also from bench trials and guilty pleas, the court later explained that *Taylor* did not purport to strictly limit sentencing courts to consideration of charges and instructions. *Shepard v. United States*, 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Instead, by limiting the evidence that the sentencing court may consider, the *Taylor* court rejected the "factual" approach, in which the sentencing court, in effect, conducts a "trial within a trial" to determine whether the defendant committed generic burglary. *Taylor,* 495 U.S. at 601, 110 S.Ct. 2143, 109 L.Ed.2d 607. By the same token, a sentencing court is permitted to consider only facts necessarily proven by the prosecution or admitted by the defendant in the underlying litigation. *Shepard* at 20. Accordingly, *Taylor* and its progeny hold that, in determining which statutory phrase was the basis for a predicate conviction, sentencing courts confronted with the ACCA enhancement may consult charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, jury instructions, and jury verdict forms, or some comparable part of the record. *Johnson v. United States*, ___ U.S. ___, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010).

**{¶ 23}** This approach, which allows a court to go beyond the mere fact of conviction in order to determine whether the elements of the predicate offense are present, has become known as the modified categorical approach. *See, e.g., Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007).

**{¶ 24}** With that framework in mind, we turn our attention to the Ohio statute at issue here.

*Statutory Purpose and Language*

**{¶ 25}** The General Assembly purportedly enacted the sex-offender registration laws for the purpose of protecting the safety and general welfare of the public. R.C. 2950.02(B); *State v. Cook,* 83 Ohio St.3d 404, 417, 700 N.E.2d 570 (1998). In order to accomplish that goal, the General Assembly identified certain Ohio offenses, the commission of which it concluded tends to indicate the likelihood of future dangerousness, and required persons convicted of those offenses to register their whereabouts so that the community can be made aware of their presence. *Id.*

**{¶ 26}** To that end, R.C. 2950.01(A)(1) provides a list of 11 Ohio criminal statutes, including R.C. 2907.02 (rape), and provides that convictions under those statutes are sexually oriented offenses. The statute also lists other Ohio criminal statutes that qualify as sexually oriented offenses only if certain aggravating factors are present, such as sexual motivation. *See, e.g.*, R.C. 2950.01(A)(4) (providing that felonious assault under R.C. 2903.11 is a sexually oriented offense when it is committed with a sexual motivation). Finally, the statute defines some out-of-state convictions as sexually oriented offenses under Ohio law. Specifically, R.C. 2950.01(A)(11) provides:

A violation of any former law of this state, any existing or former municipal ordinance *or law of another state* or the United

States, any existing or former law applicable in a military court or in an Indian tribal court, or any existing or former law of any nation other than the United States that is or was *substantially equivalent* to any offense listed in division (A)(1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of this section.

(Emphasis added.)

{¶ 27} In defining out-of-state sexually oriented offenses by their substantial equivalence to the Ohio listed offenses, the General Assembly identified a uniform category of offenses that are sexually oriented offenses. Unlike the *Taylor* court, then, we need not struggle with defining the relevant statutory terms because that has been done by the General Assembly. *See* R.C. 2950.01(A)(1) through (10).

{¶ 28} Another significant distinction between the *Taylor* court's task and ours is that the ACCA sentence enhancement tolerated only "minor variations" between the relevant definitions. In contrast, the Ohio statutory phrase "*substantially* equivalent" expressly leaves room for potential distinctions between the out-of-state statute and the relevant Ohio statute. *Miller v. Cordray*, 184 Ohio App.3d 754, 2009-Ohio-3617, 922 N.E.2d 973, ¶ 15 (10th Dist.); *Core v. State*, 191 Ohio App.3d 651, 2010-Ohio-6292, 947 N.E.2d 250, ¶ 13 (10th Dist.). "Equivalent" means "like in signification or import." *Webster's Third New International Dictionary* 769 (1986). The General Assembly chose to modify "equivalent" with "substantially," which means "being that specified to a large degree." *Id.* at 2280. It is similarly defined as " 'being largely but not wholly that which is specified.' " *Swan Creek Twp. v. Wylie & Sons Landscaping,* 168 Ohio App.3d 206, 2006-Ohio-584, 859 N.E.2d 566, ¶ 28 (6th Dist.), quoting *Merriam Webster's Collegiate Dictionary* 1174 (10th Ed.1996). "Substantially" is the operative word.

*Lloyd's proposed test*

{¶ 29} Lloyd contends that a court is always limited to comparing the elements of the out-of-state offense and the listed Ohio offenses in determining whether the out-of-state offense is "substantially equivalent" to a listed Ohio offense. He argues that a court is permitted to make a finding of substantial equivalence when the statutes are differently worded only if they describe the same conduct and the same mental state.

{¶ 30} The analysis suggested by Lloyd would permit a court to conclude that an out-of-state criminal conviction is substantially equivalent to a listed Ohio offense when the out-of-state statute is narrower than the relevant Ohio criminal provision or when the out-of-state statute is similar to Ohio's with only minor variations. *See Taylor,* 495 U.S. at 599, 110 S.Ct. 2143, 109 L.Ed.2d 607. Those results would certainly be justified by the plain and ordinary meaning of "substantially equivalent." But this same approach would also require a court to conclude that an out-of-state conviction is not substantially equivalent to a listed Ohio offense when the out-of-state statute is broader. *See id.* The conclusory nature of the latter result is inconsistent with the plain and ordinary meaning of the statutory phrase "substantially equivalent." That result would also thwart the legislature's intent because it would prevent Ohio law from reaching some of the offenses identified by the General Assembly only because of idiosyncrasies in the criminal codes of foreign jurisdictions. We, therefore, reject Lloyd's proposed test.

*Substantial-Equivalence Test*

{¶ 31} We find the reasoning of *Taylor* to be apt. We conclude that in order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute

10

defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the record in a narrow class of cases where the factfinder was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.

*Lloyd's Texas Conviction*

{¶ 32} Lloyd's Texas conviction for aggravated sexual assault is substantially equivalent to rape in Ohio under R.C. 2907.02(A)(2), an offense listed in R.C. 2950.01(A)(1). R.C. 2907.02(A)(2) provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." In Texas, Lloyd was convicted of aggravated sexual assault in violation of Texas Penal Code 22.021(a)(1), which provides that a person commits an offense if the person:

> (A) intentionally or knowingly:
>
> (i) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
>
> (ii) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
>
> (iii) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

**{¶ 33}** Lloyd concedes that the Texas statute is substantially equivalent to Ohio's rape statute with one exception—the requisite mental states. The Texas statute criminalizes certain sexual conduct when it is committed intentionally or knowingly. *Id.* at (a)(1)(A). Ohio's rape statute requires proof that the prohibited acts were committed purposely. R.C. 2907.02(A)(2). We consult the portions of the record offered into evidence to determine which mental state was the basis for Lloyd's Texas conviction.[2]

**{¶ 34}** The record contains certified copies of the indictment, jury instructions, and judgment entry from Lloyd's Texas case. The two-count indictment charged aggravated sexual assault and sexual assault. The aggravated-sexual-assault count charged that Lloyd did

> intentionally and knowingly sexually assault [the victim][3] by causing his male sexual organ to penetrate the mouth of [the victim], without [her] consent, and * * * compelled [her] to submit and participate by the use of physical force and violence, and * * * did * * * intentionally and knowingly by acts and words place [the victim] in fear that serious bodily injury and death would be imminently inflicted on [her].

(Footnote added.)

---

2. The state argues in the alternative that the offenses are substantially equivalent on their face because even "knowingly" is, as a practical matter, the same as "purposely." It queries, "Under what circumstance could Lloyd have satisfied all the elements of Aggravated Sexual Assault knowingly and not also have assaulted his victim purposely?" Lloyd offers his answer to that question in his reply brief. He contends that the distinction between knowingly and purposely has been carefully drawn in the Ohio Revised Code, and the two terms are not meant to be used interchangeably. That issue, raised and argued in the alternative by the parties, is outside the scope of this appeal.

3. The indictment refers to the victim as "95PSEUJLK."

**{¶ 35}** That same count further charged, in almost identical language, that Lloyd intentionally and knowingly sexually assaulted the victim by causing his male sexual organ to penetrate the female sexual organ of the victim.

**{¶ 36}** Lloyd argues that the jury instructions "ordered the jury to convict Mr. Lloyd of aggravated sexual assault" if it "found that he acted 'knowingly.' " That statement is correct, but incomplete. The jury was instructed that it was permitted to find Lloyd guilty if it concluded that he *either* intentionally or knowingly committed the prohibited acts. The court explained to the jury that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct." The court further explained that "[a] person acts knowingly or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

**{¶ 37}** The judgment entry reflects that Lloyd was convicted of both intentionally and knowingly committing the prohibited acts because the jury verdict was "guilty of Aggravated Sexual Assault *as charged* in Count One of the indictment." (Emphasis added.) That verdict was not prohibited under the instructions or the law.

**{¶ 38}** For these reasons, we hold that the indictment, jury instructions, and judgment entry demonstrate that Lloyd was convicted of intentionally and knowingly committing aggravated sexual assault. Because, as Lloyd concedes, "intentionally" is substantially equivalent to "purposely," his Texas conviction was for an offense that is substantially equivalent to rape under R.C. 2907.02(A)(2). Consequently, Lloyd was convicted of an out-of-state offense that is a sexually oriented offense in Ohio. We turn now to the second prong of the proposition before us today, i.e., determining the sanction for failing to register in Ohio.

*Sanction for Failing to Register in Ohio under R.C. 2950.99*

**{¶ 39}** In R.C. 2950.99, the General Assembly established the punishment for violations of the sex-offender-registration laws by providing for classification of the offenses. *See generally* R.C. 2950.99(A)(1) (providing that violations of the registration laws are felonies of the first, second, third, or fourth degree, depending on certain factors). Classification of the registration offense is primarily dependent on the classification of the underlying sex offense. *See id.*

**{¶ 40}** Lloyd contends that, in order to determine the classification of the underlying sex offense, a court must conduct a second elemental comparison. This second comparison, Lloyd suggests, involves examining the Ohio criminal code in order to determine whether there exists an Ohio offense so closely aligned with the Texas offense that the same act or acts, committed in Ohio, would constitute an offense under Ohio law. Lloyd suggests that this second elemental comparison involves a more stringent standard than the substantial-equivalence test and requires the elements to be more precisely aligned. For that reason, Lloyd concludes that even if his Texas conviction is substantially equivalent to rape, it would nonetheless constitute misdemeanor menacing if committed in Ohio. For that reason, Lloyd turns to R.C. 2950.99(A)(1)(a)(iii), which provides, "If the most serious sexually oriented offense * * * that was the basis of the registration * * * requirement * * * is a * * * misdemeanor * * * or a comparable category of offense committed in another jurisdiction, the offender is guilty of a felony of the fourth degree," and concludes that his convictions for failure to register are, by operation of law, fourth-degree felonies. The fact that menacing is not a sexually oriented offense in Ohio does not dissuade Lloyd of the correctness of his position.

**{¶ 41}** The state counters that a second elemental test is not required. Accordingly, the state turns to R.C. 2950.99(A)(1)(a)(ii), which provides, "If the most serious sexually oriented offense * * * that was the basis of the registration

* * * requirement * * * is a felony of the first, second, third, or fourth degree * * * or a comparable category of offense committed in another jurisdiction, the offender is guilty of a felony of the same degree * * *." The state therefore concludes that any violation of Lloyd's registration duties would be a first-degree felony because rape, the Ohio offense that is substantially equivalent to Lloyd's Texas conviction, is a first-degree felony. As used in these subsections,

> "comparable category of offense committed in another jurisdiction" means a sexually oriented offense * * * that was the basis of the registration * * * requirement * * * that is a violation of an existing or former law of another state * * * and that, if it had been committed in this state, would constitute or would have constituted * * * a felony of the first, second, third, or fourth degree for purposes of division (A)(1)(a)(ii) of this section [and] a felony of the fifth degree or a misdemeanor for purposes of division (A)(1)(a)(iii) of this section * * *.

R.C. 2950.99(A)(3).

{¶ 42} Nowhere in this statutory scheme do we perceive the requirement that a court engage in a second elemental test to determine the "comparable" Ohio offense, as Lloyd suggests. Instead, the penalty provision builds upon the registration provisions. The General Assembly defined "comparable category of offense" by reference to the sexually oriented offense that was the basis of the registration requirement and that is a violation of an existing or former law of another state. *Id.* This is plainly a reference to R.C. 2950.01(A)(11) (defining sexually oriented offense as an out-of-state offense that is or was substantially equivalent to a listed Ohio offense).

**{¶ 43}** As the state succinctly puts it, "[a]n out-of-state violation can only be a sexually oriented offense and a basis for registration in this state if it is 'substantially equivalent' to [a listed] Ohio offense * * *." The balance of the definition requires a court to determine the classification of the offense that would apply if the out-of-state offense had been committed in Ohio. In defining "comparable category of offense," the legislature not only presumed that the substantial-equivalence determination had already been made and the duty to register had already been proven, it incorporated the substantial-equivalence analysis into the definition. We conclude that in doing so, the General Assembly requires courts to identify the level of offense of the listed Ohio crime that is or was the substantial equivalent of the out-of-state conviction in order to determine the classification of the registration violation that is based on an out-of-state conviction. Because rape in Ohio is a first-degree felony, any violation of Lloyd's registration duties is also a first-degree felony. *See* R.C. 2950.99(A)(1)(a)(ii).

**{¶ 44}** Having addressed the two issues directly before us, we turn our attention to a deficiency in the state's proof that is readily apparent from the record.

*Duty to Register in Ohio under R.C. 2950.04*

**{¶ 45}** Ohio's sex-offender-registration laws are applicable to out-of-state offenders by operation of R.C. 2950.04(A)(4), which provides:

> Regardless of when the sexually oriented offense was committed, each person who is convicted, pleads guilty, or is adjudicated a delinquent child in a court in another state * * * for committing a sexually oriented offense shall comply with the following registration requirements if, at the time the offender * * * moves to and resides in this state * * *, the offender * * *

16

has a duty to register as a sex offender  * * * under the law of that
other jurisdiction as a result of the conviction [or] guilty plea * * *.

**{¶ 46}** Thus, the General Assembly imposes a duty to register on a person who has been convicted of a sexually oriented offense in another jurisdiction only if at the time he moves to Ohio, he has a duty to register in the other jurisdiction as a consequence of the conviction. *Id.* Accordingly, the state not only had the burden to prove that Lloyd's aggravated-sexual-assault conviction is a sexually oriented offense under Ohio law, but it was also required to prove that at the time Lloyd moved to Ohio, he was under a duty to register in Texas as a result of the 1995 conviction. In this regard, the state failed to do what was required of it.

*Proof of Lloyd's Duty to Register in Texas*

**{¶ 47}** In its case-in-chief, the state failed to produce any evidence whatsoever that at the time Lloyd moved to Ohio, he was under a duty to register in Texas as a result of the conviction in that state. The state failed to produce any evidence that Lloyd had registered as a sex offender in Texas or that he had been given notice by any Texas authority that he was under a duty to register in Texas. It failed to produce any judgment entry that reflected that Lloyd had been adjudicated a sex offender in Texas. And it failed to call any witness to testify as to how Lloyd's sex-offender status was established in Ohio. It failed to make any legal argument about the consequences of Lloyd's aggravated-sexual-assault conviction in Texas. It failed in any way to establish Texas's sex-offender registration law or its effect, if any, on Lloyd.

**{¶ 48}** In holding that the evidence was sufficient to establish that Lloyd had a duty to register in Texas, the Fifth District agreed that the state failed to offer any proof at all as to this element. Instead, it relied on Lloyd's testimony in his own defense, which came after the trial judge denied Lloyd's first Crim.R. 29

motion.[4]  On direct examination, Lloyd acknowledged that he had been convicted of aggravated sexual assault in Texas.  He explained that he had moved to Texas because of military duties, and, a few months after he was released from prison in Texas, he moved to Ohio, the state in which he was born and which he considers home.  Before he moved to Ohio, he contacted the Auglaize County Sheriff's Office, which classified him as a sexually oriented offender.  Lloyd registered as instructed.

{¶ 49}  In concluding that Lloyd testified that he had a duty to register in Texas as a result of his 1995 conviction, the Fifth District relied on the following testimony:

Q.  So, when were you released from prison?

A.  In I believe it was July of 2005 I believe.

Q.  And when did you move to Ohio?

A.  I believe it was October or November of 2005.

Q.  And why did you come here?

A.  I was born in Ohio.  The only reason I was really in Texas was because of my military duties; so this is kind of home for me Ohio is.

Q.  And did you go through certain procedures to establish your duty to register before you left Texas?

A.  Yes.  I had to get a form.  They give you a form to take to the next place that you register and stuff.  So I got the form and

---

4. Lloyd's otherwise extensive motion for acquittal did not expressly challenge the state's failure to offer any evidence on this element.  We assume, without deciding, that the court of appeals properly considered Lloyd's testimony in deciding the sufficiency of the evidence.  *See State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist.1996), citing *Helmick v. Republic-Franklin Ins. Co.*, 39 Ohio St.3d 71, 73, 529 N.E.2d 464 (1988) (holding that, if a motion for acquittal is properly renewed, an appellate court reviewing the original motion examines only the portion of the record toward which the original motion was directed).

then when I moved to Auglaize County I had to take that form in the sheriff's office there and show them the form and they had the same issue that the codes weren't comparable, so Texas and the officer there talked over the phone and everything else and they said "We don't have this type of * * *." In Texas I was * * *.

> Q. To cut to the chase.
>
> A. Okay.
>
> Q. You were classified a sexually oriented offender.
>
> A. Sexually oriented offender because [sic].

{¶ 50} Contrary to the Fifth District's characterization of this passage, it is apparent to us that Lloyd's testimony did not constitute sufficient evidence to prove that at the time he moved to Ohio, he was under a duty to register in Texas as a result of the 1995 conviction.

{¶ 51} Although Lloyd discussed obtaining a form, he did not explain what the form was or where he got it. He testified as to when he got it—that is, before he left Texas. But he did not testify that he obtained it from Texas authorities. His testimony does not confirm that the form was in any way related to the aggravated-sexual-assault conviction. Moreover, Lloyd testified that there was some kind of confusion when Auglaize County determined his sex-offender status. He testified that an officer in Texas told someone from the Auglaize County Sheriff's Office that "We don't have this type of * * *." Lloyd continued, "In Texas, I was * * *." Lloyd could have easily finished that sentence by saying, "not under a duty to register." Rather than acknowledge these obvious ambiguities as we are required to do, the dissent would employ clairvoyance to supplement the record.

{¶ 52} In an abundance of caution, Lloyd may very well have notified Ohio authorities of his Texas conviction despite not having a duty to register in

Texas. The state did not take the opportunity—even on cross-examination—to develop this issue. The dissent quotes one word, "yes," from Lloyd's testimony out of context and would hold that it makes the state's case. Lloyd's testimony, the only evidence on this issue, was that the Auglaize County Sheriff was confused about whether or how to classify Lloyd. The courts cannot make inference upon inference.

{¶ 53} The dissent also seeks to relieve the state of its burden to prove that Lloyd had a duty to register merely because Lloyd registered as instructed. Fundamentally, the dissent assumes that the Auglaize County Sheriff's determination of Lloyd's sex-offender status was legally and factually correct. That assumption is unreasonable, especially on this record.

{¶ 54} The irregularities in the Auglaize County Sheriff's employees' handling of Lloyd's registration are well documented. One corrections officer testified that, as a matter of practice, the Auglaize County Sheriff's Office would sometimes agree to permit offenders to update the registry late, thereby arguably waiving the deadline. But it is not at all clear if Ohio law permits such a waiver. Also, the testimony of other officers revealed that none of the Auglaize County employees in charge of sex-offender registration were properly trained on how to certify the registration forms. Tellingly, that practice was not corrected until after Lloyd was charged.

{¶ 55} Finally, the Auglaize County officer working with Lloyd in his attempts to transfer his registration readily admitted under oath that he (the officer) did not know how the law works when a registrant cannot, as was the case here, supply a change of address 20 days in advance. The applicable procedure is prominently set out in Ohio's registration laws. R.C. 2950.05(G)(1). On the day that Lloyd moved to Holmes County, he phoned the Auglaize County Sheriff's Office, gave his new address to an officer there, and told him that he intended to appear in Holmes County to update the registry. Focusing on quirks in the

computer system, that officer unequivocally told Lloyd that it was not possible to register in Holmes County until he returned to Auglaize County to update the computer, thereby dissuading Lloyd from making a personal appearance in Holmes County. The seven law-enforcement officers who testified on behalf of the state could not agree—even at the time of trial—whether Lloyd should have been able to register in Holmes County without first returning to Auglaize County. Meanwhile, officials from both counties independently informed the courts that neither would have pursued prosecution if Lloyd had appeared in Holmes County to register, even if he had done so after the deadline and without first giving notice.

{¶ 56} This case highlights the reasons why a court cannot assume that a defendant is under a duty to register merely because law enforcement claims that he is. After all, the courts are still the independent venue for sorting out law enforcement's allegations, on the basis of actual proof.

{¶ 57} Lloyd's convictions are, therefore, vacated.

### CONCLUSION

{¶ 58} Lloyd's Texas conviction for aggravated sexual assault is a sexually oriented offense in Ohio because it is substantially equivalent to rape, a listed Ohio offense. Because rape in Ohio is a first-degree felony, violation of Lloyd's registration duties would also constitute a first-degree felony. Accordingly, we approve those portions of the court of appeals' opinion. But we must set aside Lloyd's convictions because the state failed to prove that Lloyd was under a duty to register in Texas as a result of his 1995 conviction when he moved to Ohio, as it was required to do.

Judgment reversed.

PFEIFER, LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., dissents.

_____

**O'DONNELL, J., dissenting.**

{¶ 59} Respectfully, I dissent.

{¶ 60} The issue accepted for review in this case concerns whether the Texas offense of aggravated sexual assault is substantially equivalent to the crime of rape as defined in Ohio. I concur with the majority's determination that these offenses are equivalent.

{¶ 61} This court did not accept Lloyd's fourth proposition of law that "[t]he State failed to prove that Mr. Lloyd had a duty to register under Megan's Law"; thus, any challenge to the sufficiency of the evidence supporting his convictions is not properly before the court.

{¶ 62} On direct examination, Lloyd admitted that he had a duty to register in Texas and that duty triggered a duty to register in Ohio when he moved to this state. When asked by his attorney, "Did you go through certain procedures to establish your duty to register before you left Texas?" Lloyd answered, "Yes." Moreover, he testified that he had been classified as a sexually oriented offender on moving to this state, which meant that he had a duty to register once a year for ten years. Thus, Lloyd's own admissions demonstrate his knowledge of his duty to register as a sex offender in Ohio.

{¶ 63} Further, Lloyd's own testimony establishes that he violated the notice and registration requirements imposed on sex offenders. He admitted that he had mailed his letter to the Auglaize County Sheriff less than 20 days prior to his move to Holmes County. And although he called the Holmes County Sheriff on the day of his move, he failed to appear in person and register in Holmes County until more than a week after he had relocated there.

{¶ 64} Accordingly, because the record supports the findings that Lloyd failed to provide 20 days' notice before moving from Auglaize County and failed

22

to timely register in Holmes County, I would affirm the judgment of the appellate court.

_____

Steve Knowling, Holmes County Prosecuting Attorney, and Sean Mathew Warner, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.

_____