**[Cite as *State v. Neal*, 2025-Ohio-312.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                     Court of Appeals No.  S-23-028

     Appellee                            Trial Court No.  22 CR 448

v.

Mourice Neal                                 **DECISION AND JUDGMENT**

     Appellant                           Decided:  January 31, 2025

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment by the Sandusky County Court of

Common Pleas, General Division, which sentenced appellant, Mourice Neal, to serve an

indefinite prison sentence of four to six years after a jury found him guilty of a violation

of R.C. 2950.04(A)(4)(a) for failing to comply with Ohio's registration requirements.

{¶ 2} For the reasons set forth below, this court affirms the trial court's judgment.

**{¶ 3}** Appellant sets forth two assignments of error in this appeal:

1.  Appellant's conviction was against the manifest weight of the evidence.

2.  The trial court abused its discretion in accepting Appellant's waiver of counsel because it was not knowingly, voluntarily, and intelligently made, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

### I. Background

**{¶ 4}** This appeal originated from a complaint filed in Fremont Municipal Court on May 26, 2022, which was then bound over to the Sandusky County Common Pleas Court. Thereafter, a Sandusky County Grand Jury issued a felony indictment on June 17, 2022, against appellant, a convicted sex-offender by a Michigan court with a lifetime reporting requirement, for failing to comply with Ohio's registration requirements at the time he moved to Ohio, a violation of R.C. 2950.04(A)(4)(a) and a first-degree felony under R.C. 2950.99(A)(1)(a)(ii).

**{¶ 5}** The indictment specifically reads, in pertinent part:

> To wit: the defendant having been classified as a Tier 3 registered sex offender in the state of Michigan, having been convicted of Criminal Sexual Conduct – First Degree, Person Under Thirteen in violation of 750 520B1A and subject to a lifetime reporting requirement, did fail to register with the Sandusky County Sheriff within three days of becoming domiciled in the City of Fremont and was found to be living at 319 ½ Garrison Street, Apartment 2R, Fremont, Ohio.
> In violation of R.C. 2950 .04(A)(4)(a) and 2950.99(A)(1)(a)(ii) DUTY TO REGISTER – A Felony of the First Degree.

2.

## A. Pretrial Proceedings

{¶ 6} Appellant pled not guilty, and the matter was set for trial on September 21, 2023. During this pretrial period, appellant received three court-appointed attorneys to represent him, but he did not want them, and the trial court granted the first two attorneys' motions to withdraw as counsel.

{¶ 7} At the final pretrial on September 13, which was eight days prior to trial, appellant clearly and calmly informed the court he wished to proceed to trial by representing himself pro se. There was an extensive discussion between the trial court and appellant regarding whether appellant made his decision for self-representation voluntarily, knowingly and intelligently. In reaching that decision, the trial court openly discussed: 1) appellant's GED-level education, 2) lack of experience with the criminal courts, with a criminal trial, with the rules of evidence, and with the rules of criminal procedure, 3) lack of understanding of criminal law and of the first-degree offense charged, 4) lack of understanding of appellee's plea offer, 5) his disadvantage of being held to the same standard of legal practice before the trial court to which attorneys are held, 6) the seriousness of the penalty range he faced if convicted, 7) waiving the right to claim ineffective assistance of counsel if displeased with the trial outcome, and 8) understanding his right to remain silent. The trial court plainly clarified for appellant, "This Court is not going to act as your lawyer[.]"

{¶ 8} The transcript in the record shows the trial court asked appellant 45 questions related to appellant's decision to represent himself at trial. To each matter when

3.

the trial court directly asked if appellant still wanted to represent himself, appellant repeatedly and clearly stated that he did. The trial court eventually asked, "So my last time I'll ask, is this what you want to do? Do you want to represent yourself?" Appellant replied, "Yes."

{¶ 9} Appellant also signed the written waiver of his right to be represented by counsel, which is in the record.

> Court: You are going to sign a document that states that you understand you've been informed by this Court of your right to be represented by counsel in this case. . . . You do intend to represent yourself Pro Se and act as your own attorney at a trial . . . in this case. . . . I'm going to ask that you read [the Waiver of Right to Counsel]. I've already read it to you in open court, and then sign it where indicated, and we'll go from there. . .  All right. I have received back from the Bailiff that Waiver of Right to Counsel signed by you, Mr. Neal; is that correct?
> Appellant: Yes.
> Court: You read it and understood it?
> Appellant: Correct.
> Court: And you've understood everything that's happened here today?
> Appellant: Yes.
> Court. Yes, okay. Then the Court will find that you've been fully informed of your right to counsel and you understand these rights, and further finds that . . . you've made a knowing, voluntary, and intelligent waiver of that right. The Court will allow you to represent yourself in this matter[.]

{¶ 10} As explained by Mr. Feigl, appellant's third attorney, at the final pretrial, appellant had already decided "[he] wished to represent himself. He said he's asked for that before and that was denied by this Court, so I felt it was my . . . ethical duty to file a Motion to Withdraw as counsel citing that request and desire in this case." Ultimately, the trial court decided to partially grant Mr. Fiegl's motion to withdraw as counsel and

4.

ordered him to remain in the courtroom as standby counsel. The trial court explained to

appellant:

> Court: He will not represent you, will not ask the questions, but if
> you have questions of him privately during the course of your trial, you can
> inquire of him and . . . he can assist in what ways he feels he can assist,
> that's what I will do for you, but for all intents and purposes, you'll be
> trying your own case. Do you understand that?
> Appellant: Yes.

{¶ 11} One matter extensively discussed in the record was a speedy-trial defense.

Mr. Feigle reported to the trial court that "this [case] is quite old and no calculation . . .

has yet been completed by myself or the State of Ohio as to whether or not Speedy Trial

has been violated in this case, so that is another issue that, if I remain on the case further,

I need to file a Motion for Dismissal based on a violation of Speedy Trial." Mr. Feigle

continued that as the third attorney representing appellant, he is "at a significant

disadvantage . . . as far as the calculation of Speedy Trial, the number of continuances

that have been – on whether or not time has been tolled or attributable to the State of

Ohio or – I don't believe any time waiver [has] ever been filed." The trial court then

directly addressed appellant on the speed-trial issue.

> Court: All right, Mr. Neal, the Court is obviously aware of this case .
> . . and it has some complexities, largely brought on by you. . . . This is your
> third court appointed attorney, Mr. Feigl is. There are numerous things that
> . . . stop the clock on Speedy Trial, meaning tolled the time, . . . and I'm not
> going to go through each and every one of them, but . . . I'm not going to
> presuppose . . . that your Speedy Trial rights haven't been violated, but I . .
> . would find it very unlikely given the tolling events in this case, but
> certainly, your attorney is – is free to – to try to calculate some Speedy
> Trial issue . . . and present it to the Court. That's always something that
> could be presented at any time prior to trial.
>                   . . .

5.

It sounds like you want to utilize [Mr. Fiegl's] experience to determine whether there is a Speedy Trial issue. I think it would make a lot of sense to keep Mr. Fiegl on to try the case, too, because of that experience. That's . . . where I am with it, but I got to know from you whether you want that to happen or not, 'cause if not, then we have to go through some questions and answers about you representing yourself, and I got . . . to have that dialogue with you, so what are your thoughts about Mr. Fiegl staying on and representing you for the trial next week?

Appellant: How do you feel about that?

Mr. Feigl: Mr. – Mr. Neal, I – I can try this case. That is not a concern for me. My concern is that you believe that there are defenses available to you that I do not believe exist, and . . . you're not, I guess, accepting my advice and counsel . . . as I told you yesterday, I considered in terms of potential strict liability offense, that, you know, if there's a Duty to Register and a failure of that duty, that completes the offense. There's no ultimate state of mind that needs to be proven beyond that you didn't do it. You were neglect (sic.) in that affect (sic.). You – well, it's a knowing standard. You knew you had to register and you didn't register, so it's real simple. There's no complex criminal – criminal elements to really dive into.

You've indicated to me, did you not, that you wanted to represent yourself?

Appellant: That is correct.

. . .

Court: You . . . want to represent yourself?

Appellant: Correct.

Court: You disagree with his assessment of – of the possible theories that you have about why this is a – why this prosecution shouldn't occur; you disagree with his assessment of those things? . . . [A]nd so you – you disagree with Mr. Fiegl's advice . . . about that?

Appellant: Yeah, because I'm hearing two stories.

Court: Well, what do you mean?

Appellant: One story is there's no way out; another story is there's a possibility, so looking at the two stories, no way out is weighing way more grounds than the – the new possibility, which I'm just aware of today.

## B. Trial

{¶ 12} The jury trial commenced on September 21, 2023, and appellant appeared pro se. The jury heard testimony from one witness, Michael Showman, the Sandusky

County deputy sheriff in charge of sex-offender registrations, and the trial court admitted three exhibits into evidence without any objection from appellant. Appellant did not call any witnesses and did not move to admit any evidence. At the trial's conclusion, the jury found appellant guilty of violating R.C. 2950.04(A)(4)(a). Sentencing occurred immediately after the conviction, and the trial court ordered appellant to serve an indefinite prison sentence of four to six years, of which four years was mandatory.

{¶ 13} Appellant timely appealed. We will address appellant's assignments of error out-of-order.

## II. Waiver of Counsel

{¶ 14} Appellant's second assignment of error challenges the trial court's partial grant of the third attorney's motion to withdraw as counsel, where the attorney was ordered to remain as stand-by counsel during trial. Appellant argues, although he desired to proceed pro se at his criminal trial, the trial court failed to meaningfully explain everything to him. In support, citing *State v. Johnson*, 2023-Ohio-2424, ¶ 43 (6th Dist.), *appeal not allowed,* 2024-Ohio-335, appellant argues the trial court failed to "make sufficient inquiry" whether appellant fully understood the relinquishment of his right to counsel and voluntarily, knowingly and intelligently elected to defend himself without counsel, despite signing the waiver-of-counsel paperwork

{¶ 15} Appellant points to *State v. Jones*, 2020-Ohio-6777, ¶ 18 (6th Dist.) for the trial court's duty to adequately explain to him: 1) the nature of the charges, 2) the statutory offenses included within them, 3) the range of allowable punishments, 4)

7.

possible defenses to the charges and mitigating circumstances, 5) the dangers and disadvantages of self-representation, and 6) all other facts essential to a broad understanding of the whole matter. Citing *Johnson* at ¶ 45, appellant argues the trial court failed to meet its duty and abused its discretion because its discussion with him was "insufficient to establish that Neal waived his right to counsel knowingly, intelligently, and voluntarily."

{¶ 16} Appellant only points to two exchanges with the trial court during the final pretrial hearing that appellant argues were of "sketchy or minimal inquiry," citing *Jones* at ¶ 19, to warrant reversal of his conviction and sentence. First, appellant argues the trial court failed to give appellant "a definitive answer" on the merits of a speedy-trial defense. Appellant concludes that had the trial court not accepted his written waiver of counsel, then "Neal's trial counsel would have been able to fully research Neal's potential Speedy Trial claims – both statutory and constitutional – and raised that issue, or issues, in a Motion to Dismiss prior to trial." However, appellant was aware of the speedy-trial issue, and Mr. Feigl was appellant's stand-by counsel and was available to respond to and advise appellant on that legal issue upon request. Second, appellant argues the trial court failed to explore with appellant the "two stories" he believed were present at the time appellant waived his right to counsel. We are not persuaded.

{¶ 17} In response, appellee argues de novo review, not abuse of discretion, is the correct standard of review of the validity of appellant's waiver of his right to counsel. We agree. *Id.* at ¶ 10 (in conducting a de novo review of whether a defendant knowingly,

8.

intelligently and voluntarily waived the right to counsel, we independently examine the record to determine the totality of circumstances of such waiver).

{¶ 18} This case contrasts with *Johnson*, where we held that a trial court does not abuse its discretion to supervise the appointment of counsel and control the criminal proceedings when denying the defendant's surprise request for self-representation the morning of trial as part of a strategy to "shout away the trial." *Johnson* at ¶ 40-45. Here, there was no morning-of-trial surprise or shouting. Appellant was on his third court-appointed attorney at the time Mr. Feigle filed his motion to withdraw-as-counsel nine days before trial. When appellant calmly and clearly made his request for self-representation to, and discussed that decision with, the trial court, it was eight days before the start of trial. Ultimately, the trial court granted Mr. Feigl's motion to withdraw but ordered him to remain as stand-by counsel. At all times appellant had legal counsel available to him.

{¶ 19} Appellee further argues the trial court fully complied with Crim.R. 44(A) and (C), which govern the waiver of a defendant's right to counsel that is memorialized in writing. We agree. The written waiver of right to counsel signed by appellant is in the record and specifically addresses appellant's: 1) right to hire an attorney, 2) right to request a continuance, 3) right to have court-appointed counsel, 4) receipt of information of the potential penalties faced if convicted, and 5) receipt of explanations of the dangers and disadvantages of self-representation. The waiver further states,

> After having been informed of my rights, I fully understand those
> rights and have no additional questions for the court. I hereby assert that

9.

no person has threatened me, promised me leniency, or in any other way coerced or induced me to waive the right to counsel. I have considered my rights carefully and being of competent mind and not under the influence of any mind-altering substance, I hereby knowingly, intelligently, and voluntarily waive my right to be represented by counsel in this case.

{¶ 20} Appellee further argues, "there is no script required for the trial court to read, and while there is case law that advises that the trial court should engage in a discussion regarding possible defenses, again, the inquiry the trial court must engage in is case-specific," citing *State v. Reece*, 2019-Ohio-2259, ¶ 10 (6th Dist.). We agree. Here, the trial court asked appellant 45 times, in different and repeated ways, whether appellant's waiver of his right to counsel was made knowingly, voluntarily, and intelligently. The record clearly supports the determination that appellant's right-to-counsel waiver was timely and unequivocally asserted and knowingly, voluntarily, and intelligently offered. *Johnson* at ¶ 40 (6th Dist.)

{¶ 21} Appellee further argues, "There is nothing to support the argument or assertion that a trial court must give definitive answers on whether possible defenses are fruitful." We agree. Appellant's insistence he would not have waived his right to counsel without a "definitive answer" to a speedy-trial defense is not supported by the record and the case he cites. In *Jones*, this court acknowledged a trial court's duty to adequately explain "possible defenses," but there is no further requirement for that duty to reach a "definitive answer" on whether a viable speedy-trial defense exists. *Jones*, 2020-Ohio-6777, at ¶ 18 (6th Dist.). Here, the trial court explained that Mr. Feigl reviewed in the record the strengths and weaknesses of appellant's case, including the potential speedy-

trial defense, and repeatedly asked appellant to reconsider his decision to reject Mr. Feigl's legal representation. Appellant insisted on self-representation and accepted the disadvantage of being held to the same standard as attorneys. The discussion in the record reflects the speedy-trial defense would not likely succeed, and appellant does not offer in this appeal any speedy-trial calculation of his own, so this argument may be moot.

{¶ 22} Nor does appellant demonstrate he would not have waived his right to counsel without a deeper exploration of the "two stories" statement. When the trial court asked appellant what he meant, appellant explained, "One story is there's no way out; another story is there's a possibility, so looking at the two stories, no way out is weighing way more grounds than the – the new possibility, which I'm just aware of today." We can infer that appellant was thinking of defense strategies, but find he had no duty to reveal them in any detail. Appellant made his "two stories" comment immediately following Mr. Feigl's reference to a strict-liability standard for the offense rather than a knowing- or negligence-standard. Mr. Feigl addressed appellant, "You knew you had to register and you didn't register, so it's real simple. There's no complex criminal – criminal elements to really dive into." Appellant told the trial court he disagreed with Mr. Feigl's assessment of the case and then gave the "two stories" explanation.

{¶ 23} Upon de novo review we find no trial court error for the trial court's grant of appellant's right-to-counsel waiver and appointment of stand-by counsel during trial. From our independent review of the record, we find appellant waived his right to counsel voluntarily, knowingly, and intelligently.

11.

**{¶ 24}** Appellant's second assignment of error is not well-taken.

### III. Sufficiency of Evidence and Manifest Weight

**{¶ 25}** Appellant's first assignment of error claims that his conviction was against the manifest weight of the evidence.

**{¶ 26}** However, appellant's argument with respect to this assignment is dedicated to the testimony of Deputy Showman, asserting that he was unqualified to testify about Michigan law and suggests that "another witness could have testified about the elements of Rape under Ohio law."

**{¶ 27}** Therefore, appellant's argument is, more realistically, a sufficiency of the evidence argument wrapped in an evidence admissibility claim that is masquerading as a manifest weight of the evidence argument.

### A. Preservation of Error

**{¶ 28}** The first issue we must resolve is whether the appellant properly preserved his objection to Deputy Showman's testimony.

**{¶ 29}** The record of the testimony of this case establishes that appellant did not object to any of the testimony of Deputy Showman. When asked directly by the court as to whether he had any objection to the admission of any of the states' exhibits, appellant had no objection.

**{¶ 30}** Being mindful that appellant represented himself and pointedly and repeatedly refused counsel, a pro se defendant is nevertheless held to the same standard of conforming to legal procedures as an attorney and is expected to abide by the rules of

12.

evidence and procedure—regardless of his or her familiarity with them. *State v. Williams*, 2019-Ohio-2335, ¶ 47 (8th Dist.); *State v. Dixon*, 2016-Ohio-7438, ¶ 21 (12th Dist.) (the right of self-representation is not a license for failure to comply with the relevant rules of procedure and substantive laws, and a pro se defendant must accept the results of his or her own mistakes and errors); *see State v. Johnson*, 2006-Ohio-6404, ¶ 100.

{¶ 31} The failure to object to trial testimony or specify the basis for an objection waives all but plain error. *Schmidt v. Crayne*, 2024-Ohio-4726, ¶ 115-116 (6th Dist.).

{¶ 32} However, even then, unless the appellant argues a 'claim of plain error,' the appellant has waived the claimed errors not objected to below. *In re L.K.*, 2015-Ohio-1091, ¶ 16 (12th Dist.).

{¶ 33} The failure to object to a witness' qualifications or purported foundational deficiencies generally forfeits any challenge on appeal. *Michigan Millers Mut. Ins. Co. v. Christian*, 2003-Ohio-2455, ¶ 32 (3d Dist.). That is because such deficiencies could have been resolved at trial had they specifically been brought to the trial court's attention. *Schmidt* at ¶ 121-122, citing *Hammond v. Nichols*, 2003-Ohio-6463, ¶ 5 (4th Dist.).

{¶ 34} In his appeal to this court, appellant does not allege or argue that plain error occurred. Where a party fails to object to an error to the court below and then fails to make an argument that plain error occurred on an appeal, we will not consider the issue.

{¶ 35} *State v. Tate*, 2022-Ohio-4745, ¶ 20 (8th Dist.). Furthermore, this Court declines to create such an argument on his behalf. *State v. Zepeda-Ramires*, 2013-Ohio-1224, ¶ 11 (9th Dist.).

13.

## B. Sufficiency of the Evidence

{¶ 36} In reviewing a challenge to the sufficiency of evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212 (1978). Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. Naturally, this requires a review of the elements of the charged offense and a review of the state's evidence. *State v. Berry*, 2024-Ohio-5970, ¶ 14 (6th Dist.), citing *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

{¶ 37} Appellant was charged with a violation of R.C. 2950.04(A)(4)(a) which states, in pertinent part:

> Regardless of when the sexually oriented offense was committed, each person who is convicted, pleads guilty, or is adjudicated a delinquent child in a court in another state, in a federal court, military court, or Indian tribal court, or in a court in any nation other than the United States for committing a sexually oriented offense shall comply with the following registration requirements if, at the time the offender or delinquent child moves to and resides in this state or temporarily is domiciled in this state for more than three days, the offender or public registry-qualified juvenile offender registrant enters this state to attend a school or institution of higher education, or the offender or public registry-qualified juvenile offender registrant is employed in this state for more than the specified period of time, the offender or delinquent child has a duty to register as a sex offender or child-victim offender under the law of that other jurisdiction as a result of the conviction, guilty plea, or adjudication:

14.

(a) Each offender and delinquent child shall register personally with the sheriff, or the sheriff's designee, of the county within three days of the offender's or delinquent child's coming into the county in which the offender or delinquent child resides or temporarily is domiciled for more than three days.

{¶ 38} In this case, there was witness testimony and admitted evidence, including certified copies of appellant's Michigan criminal conviction record and the Michigan sex-offender registration record verifying his "Tier 3" lifetime registration on a quarterly basis.

{¶ 39} Appellant moved to Sandusky County in October, 2020, and failed to personally register with the Sandusky County Sheriff's Office within three days of being domiciled in Sandusky County. As of May 26, 2022, appellant had still failed to personally register with the Sandusky County Sheriff's Office, which resulted in the grand jury indictment.

{¶ 40} Deputy Showman, on direct examination, went into great and specific detail in describing each of the State's exhibits and the information contained therein and its significance to appellant's case.

{¶ 41} More specifically, State's Exhibit C is a certified copy of an indictment of May 3, 2001, from the 36th District Court, 3rd Circuit Court, State of Michigan. That indictment states, in pertinent part:

COUNT 1 DEFENDANT(S) 01 CRIMINAL SEXUAL CONDUCT- FIRST DEGREE (Person Under Thirteen) did engage in sexual penetration, to wit: PENIS IN ANAL OPENING, with (victim), said person being under 13 years of age, contrary to MCL 750.520b(1)(a) MSA 28.788(2)(1)(a) (750.520B1A).

15.

{¶ 42} That exhibit also contains a "JUDGMENT OF SENTENCE" by the THIRD JUDICIAL COURT, CRIMINAL DIVISION, dated May 24, 2001 which indicates MOURCE NEAL was convicted of a violation of 750520B1A after a guilty plea and sentenced to a period of incarceration of between 6 and 15 years. (Emphasis sic.)

{¶ 43} These exhibits were admitted without objection and submitted to the jury for its consideration in arriving at a verdict in this case.

{¶ 44} State's Exhibit B is a certified copy of the Michigan Sex Offender Registration records, indicating a conviction date for Mourice Neal of May 24, 2001 for a violation of 750.520B1A – CRIMINAL SEXUAL CONDUCT 1st DEGREE (PERSON UNDER 13). That exhibit also contains an 'EXPLANATION OF DUTIES TO REGISTER AS A SEX OFFENDER" with a "Signature of Offender" being Mourice Neal, dated October 13, 2014.

{¶ 45} The first page of that exhibit clearly and boldly indicates that appellant is a **Tier 3 Registration** a with a **Lifetime** requirement. (Emphasis sic.)

### C. Duty to Register in Ohio under R.C. 2950.01

{¶ 46} In all prosecutions under Ohio's sex-offender-registration laws, the state must prove that the defendant had been convicted of a sexually oriented offense that triggered a duty to register. Certain offenders who commit sexually oriented offenses out of state are subject to registration in Ohio. R.C. 2950.04(A)(4). An out-of-state conviction is a sexually oriented offense under Ohio law if it is or was substantially

16.

equivalent to any of the Ohio offenses listed in R.C. 2950.01(A)(1) through (10). R.C.

2950.01(A)(11). *State v. Lloyd*, 2012-Ohio-2015, ¶ 31.

D. Sexually-oriented Offense

**{¶ 47}** In this appeal, appellant argues that the state failed to establish that the

Michigan statute, MCL 750.520B1A, is a sexually oriented offense. An out-of-state

conviction is a sexually-oriented offense under Ohio law if it is or was substantially

equivalent to any of the Ohio offenses listed in R.C. 2950.01(A)(1) through (10). R.C.

2950.01(A)(11).

**{¶ 48}** In Ohio, "sexually oriented offense" is defined in R.C. 2950.01:

> Sexually oriented offense means any of the following violations or offenses committed by a person, regardless of the person's age: (1) A violation of section 2907.02, 2907.03, 2907.05, 2907.06, 2907.07, 2907.08, 2907.21, 2907.22, 2907.32, 2907.321, 2907.322, or 2907.323 of the Revised Code;

R.C. 2907.02(A)1)(b) states:

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

E. Substantial–Equivalence Test

**{¶ 49}** In *Lloyd*, the Ohio Supreme Court stated,

> [I]n order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes

17.

and rely on a limited portion of the record in a narrow class of cases where the factfinder was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, Ohio courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of the plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.

*Lloyd* at ¶ 31.

**{¶ 50}** Utilizing the *Lloyd* test, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes. The record clearly establishes the appellant's Michigan conviction.

**{¶ 51}** In this instance, the Michigan statute under which appellant was convicted involved the identical elements of R.C. R.C. 2907.02(A)1)(b). That is, sexual conduct with another when the other person is less than thirteen years of age.

**{¶ 52}** The record also establishes that the jury was instructed on the law defining a sexually-oriented offense, without objection from appellant. Specifically, the trial court instructed the jury:

> " A sexually oriented offense means a violation of any former law of this State, any existing or former municipal ordinance or law of another State or the United States, any existing or former law applicable in a Military Court or an Indian Tribunal -- Tribal Court, or any existing or former law of any nation under the United States that it is or was substantially equivalent to any offense listed in Division (A)(1) of this section. (A)(1) is Sexually Oriented Offense. That means any violation of Revised Code Chapter 2907.02, otherwise known as Rape."

**{¶ 53}** We note that this record does not contain any definition of R.C. 2907.02. However, appellant made no objection to the jury instructions at trial. Because he failed to object to the jury instructions, we may review only for plain error under Crim.R. 52.

18.

*State v. Ruetz*, 2023-Ohio-398, ¶ 34 (6th Dist.), citing *State v. Anaya*, 2010-Ohio-6045, ¶ 43 (6th Dist.), quoting *State v. Long*, 53 Ohio St.2d 91, 96-97 (1978).

{¶ 54} As we previously noted herein, in his appeal to this court, Neal does not allege or argue that plain error occurred and this Court declines to create such an argument on his behalf.

{¶ 55} Thus, upon our review of the record, we find that the state presented sufficient evidence to support Neal's conviction. It presented evidence that Neal was convicted in the state of Michigan of a sexually oriented offense and was under a duty to register for his lifetime. The state also presented evidence that the Michigan offense was a sexually oriented offense under Ohio law. The state further presented evidence that Neal resided in Sandusky County, Ohio and failed to register personally with the sheriff, or the sheriff's designee, of the county within three days of coming into the county.

{¶ 56} Ultimately, even if we were to review this record under a manifest weight standard as suggested by appellant, we cannot find that the jury clearly lost its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.

{¶ 57} We find appellant's first assignment of error not well-taken.

<u>Conclusion</u>

**{¶ 58}** On consideration whereof, the judgment of conviction and sentence by the Sandusky County Court of Common Pleas, General Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.