MATTHEWS, Senior Justice, concurring.
 

 I. INTRODUCTION
 

 Today the court holds that only statutory language can be consulted when determining whether a foreign conviction was committed under a statute similar to an Alaska statute listed in ASORA. In my opinion, a foreign statute should be regarded as similar to a narrower Alaska statute for ASORA purposes when it covers the same conduct as the Alaska statute, as well as other conduct, if in a particular case it is clear that the foreign conviction was based on conduct that would satisfy the elements of the Alaska statute. Since sometimes court records can show this, I would not preclude referring to them in limited circumstances. The legislature intended ASORA to apply broadly in order to best achieve its public safety purposes. The approach I favor should be adopted rather than the strict approach taken by the court because it is more consistent with this intent. It is also in accord with the overwhelming majority of cases decided under SORA statutes in other jurisdictions.
 

 II. HOW I WOULD DECIDE THIS CASE
 

 I agree with the result of the court's opinion.
 
 [1]
 
 But I do not think that it is enough to
 say that the California "annoying or molesting" statute is not similar to the Alaska sexual abuse of a minor statute merely because the California statute covers, for example, indecent exposure as well as sexual contact crimes.
 
 [2]
 

 The approach I favor would first compare the statutory language. If the California statute is similar to the Alaska statute, but broader because it covers additional conduct, further inquiry would be called for. Specifically, the question would be whether, based on the court records in the California proceeding, Doe II's conviction in California was necessarily based on conduct similar to that required for a conviction under the Alaska statute identified as similar by the Department, attempted sexual abuse of a minor in the second degree under AS 11.41.436(a)(2).
 

 The first step, statutory comparison for similarity, might be met in the present case. The "annoying or molesting" and the sexual abuse of a minor statutes have similar purposes - protecting minors from inappropriate sexual behavior by others.
 
 [3]
 
 The conduct forbidden under the California law - conduct "so lewd or obscene that the normal person would unhesitatingly be irritated by it"
 
 [4]
 
 - is broader than the conduct forbidden under AS 11.41.436(a)(2), but it would encompass such conduct - knowingly sexually touching a child under 13 or causing such a child to sexually touch herself or another person.
 
 [5]
 
 Further, both statutes require violators to register as sexual offenders.
 
 [6]
 

 Of course, there are differences between the two statutes apart from the broader scope of the conduct prohibited under the California statute. The difference in the maximum age of the potential victims - 17 in California
 
 [7]
 
 and 12 in Alaska
 
 [8]
 
 - may be significant. The fact that the California offense is a misdemeanor
 
 [9]
 
 and the Alaska offense is a felony
 
 [10]
 
 could also be significant. An accused might much more readily plead guilty or no contest to charges under the California statute than to charges under the Alaska statute. But I will assume for the purpose of discussion that these differences would not render the laws dissimilar for registration purposes, and go to the second inquiry as to the nature of the underlying offense.
 

 If it were clear from the facts established by the court records
 
 [11]
 
 in the California proceeding (1) what the nature of Doe II's conduct was that formed the basis for his conviction and (2) that such conduct was necessarily similar to conduct that would constitute attempted sexual abuse of a minor in the second degree under subsection .436(a)(2) in Alaska, the statutory standard for registration would be met, in my opinion. It would then be fair to say that Doe II was convicted of a "sex offense" as that term is used in ASORA, because Doe II's crime would be similar to attempted sexual abuse of a minor and would have been committed under a statute that, except for the greater breadth of its coverage, is similar in its purpose and its applicable elements to Alaska's statute.
 

 But the conduct on which Doe II's conviction was based is not established by the California court records. For this reason I agree that there is no permissible basis in this case for concluding that Doe II's conviction in California was for a sex offense as that term is defined under ASORA and thus
 he is not a "sex offender" with a duty to register.
 

 All states now have SORAs. Almost all state courts that have ruled on the issue have adopted some variant of the approach that I favor.
 
 [12]
 
 I will quote from three other jurisdictions to give the reader a better sense of this body of law:
 

 • Washington Court of Appeals:
 

 To determine whether an out-of-state conviction qualifies as a "sex offense," a trial court compares the out-of-state statute with comparable laws of this state. This is a two-step process, addressing both the legal definitions of the crimes and the facts underlying the convictions. First, the trial court must examine the elements of the out-of-state crime and compare them to the elements of the comparable Washington crime. If the crimes have similar elements, the analysis is complete. But, "[i]f the elements are not identical, or the foreign statute is broader than the Washington definition of the particular crime," then, as a second step, the trial court may examine the facts of the out-of-state crime " 'as evidenced by the indictment or information.' "
 
 [
 

 13
 

 ]
 

 • New Mexico Supreme Court:
 

 When the elements of the out-of-state sex offense are precisely the same elements of a New Mexico sex offense, the inquiry is at an end. However, even when the elements are dissimilar, courts should consider the defendant's underlying conduct to determine whether the defendant's conduct would have required registration in New Mexico as a sex offender.
 

 ....
 

 The remaining question is how should a New Mexico court determine the actual conduct that supported the defendant's conviction of a sex offense in another jurisdiction when deciding equivalency under SORNA.... When a defendant enters a plea of guilty or nolo contendere, the charging document, plea agreement, or transcript of the plea hearing should establish the factual basis for the plea. A New Mexico court should consider the facts stated in such documents when determining whether the conduct underlying the plea would have constituted a violation of one of the twelve enumerated SORNA offenses that require sex offender registration. In essence, the question is whether the out-of-state fact-finder necessarily must have found facts that would have proven the elements of the New Mexico registrable offense. If so, the alleged sex offender has committed the equivalent of an enumerated New Mexico sex offense.
 

 ....
 

 We realize that in some cases, such as a guilty plea in which there was no allocution, there will be no factual findings for a New Mexico court to review. In that instance, the court will be limited to comparing the elements of a foreign sex offense to those of the enumerated offenses under SORNA. In some cases, this will mean that
 out-of-state sex offenders will not have to register in New Mexico, even for serious offenses.
 
 [
 

 14
 

 ]
 

 • Ohio Supreme Court:
 

 We conclude that in order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the record in a narrow class of cases where the factfinder was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.
 
 [
 

 15
 

 ]
 

 Here are the reasons I think that the approach I favor should be preferred to the court's categorical approach. First, the criminal statutes of the several states come in many forms, and it is to be expected that many individual statutes will cover both conduct requiring registration in Alaska and conduct that does not require registration. Any thoughtful lawmaker would be aware of this fact. Second, the Alaska Legislature wanted offenders who had committed crimes elsewhere that are similar to crimes requiring registration in Alaska to register as sex offenders when moving to Alaska.
 
 [16]
 
 Third, as the court notes, the legislature by its use of the unmodified term "similar" intended that Alaska's standard should be given "a relatively broad reading" and, relatedly, suggested that it desired Alaska to be more inclusive with respect to out-of-state crimes than states using comparative phrases such as "substantially equivalent," "substantially similar," "equivalents," or "like violation."
 
 [17]
 
 But the court's strict approach needlessly limits the number of foreign convictions that qualify as a sex offense and thus poorly serves the legislature's intent. As the Ohio Supreme Court has observed, such an approach "thwart[s] the legislature's intent because it would prevent [our] law from reaching some of the offenses identified by the [legislature] only because of idiosyncracies in the criminal codes of foreign jurisdictions."
 
 [18]
 

 Although I have explained above how I think this case should be decided, and why, a
 number of additional comments seem appropriate.
 

 III. COMMENTS ON THE DEPARTMENT'S APPROACH
 

 The approach taken by the Department of Public Safety in this case cannot be justified. In deciding whether Doe II was required to register, the Department gathered investigative reports from California law enforcement authorities concerning Doe II's conduct. The Department decided that in light of the conduct shown in the reports and the elements of the California annoying or molesting statute, "the California offense as to which [Doe II was] convicted is similar to the Alaska offense of attempted sexual abuse of a minor in violation of AS 11.41.436(a)(2)." But the investigative reports on which the Department relied detailed a wide range of alleged misbehavior, only some of which might meet the elements of attempted sexual abuse of a minor as set out in this statutory subsection. The reports did not necessarily show what conduct Doe II was convicted of. The complaint to which he pled no contest was conclusory only, and did not detail any conduct. Moreover, in order to rely on the reports consistent with due process, the Department should have given Doe II notice and an opportunity to rebut them. This was not done, nor are there regulations that call for such a procedure. Further, any suggestion that the Department must conduct a trial-like proceeding in order to determine what a defendant was convicted of seems implausible in light of the expense and inefficiency involved, yet that is what due process would require. And again, even if such an approach were taken, it would show, at best, only what a potential registrant did, not, as required by ASORA, what he was convicted of.
 

 IV. IT IS NOT NECESSARY TO CHOOSE BETWEEN THE CATEGORICAL APPROACH AND THE APPROACH THAT PERMITS REFERENCE TO COURT DOCUMENTS.
 

 It is not necessary to decide in this case whether the court's approach of reviewing only the statutory language or the two-step approach I have described should be adopted. All that needs to be said is that the statutes being compared are not similar under either approach that might be used. This has the advantage of deferring the decision as to which approach is preferable to a case in which the choice actually makes a difference.
 
 [19]
 
 Experience teaches that this would be desirable because the pros and cons of a rule announced based on hypothetical facts may well look different in a concrete setting.
 
 [20]
 

 V. COMMENTS CONCERNING THE COURT'S OPINION
 

 The opinion's rationale seems to be encapsulated in the following two sentences: "Because 'similar' modifies 'law of another jurisdiction,' based on the plain language of the statute it is the
 
 law
 
 that must be similar. We therefore 'employ a categorical approach by looking to the statute ... of conviction, rather than to the specific facts underlying the crime' to determine whether that statute is similar to one of the pertinent Alaska sex offenses under AS 12.63.100(6)(C)."
 
 [21]
 

 This rationale may be read as simply concluding that because "similar" modifies "law of another jurisdiction" we are necessarily limited to consulting only statutory terms because of the constraints of the English language. Or the rationale may be that there is something compelling about the line of cases from which the quoted language is taken that requires us to limit our inquiry to the statutory terms.
 

 Taking the first possibility, the phrase "similar law" is broad enough to encompass two statutes having similar purposes that cover the same conduct in a particular case, even if one may cover conduct that the other does not in other situations. Of course, a narrower meaning is also possible. But one would expect an explanation for choosing the narrower meaning, especially when the legislature has indicated a preference for inclusivity and our case law has rejected application of a strict plain-meaning analysis.
 
 [22]
 

 The second possible meaning - that the line of cases represented by the quote from
 
 Esquivel-Quintana v. Sessions
 
 is compelling in the context of ASORA - requires an examination of the case law.
 

 Esquivel-Quintana
 
 involved a removal proceeding against a lawful permanent resident based on the government's contention that he had been convicted of "an aggravated felony," a term that explicitly included "sexual abuse of a minor," under the Immigration and Nationality Act (INA).
 
 [23]
 
 The petitioner had pleaded no contest to a California statutory rape offense criminalizing "unlawful sexual intercourse with a minor who [was] more than three years younger than the perpetrator."
 
 [24]
 
 The question was whether this offense fell within the meaning of "sexual abuse of a minor" under the INA.
 
 [25]
 
 As there is no explicit statutory definition of "sexual abuse of a minor" under the INA, the court used a "generic" definition - based on the rule in most states - that required the victim to be younger than 16.
 
 [26]
 
 Under the California statute the victim could have been as old as 17.
 
 [27]
 
 Applying the "categorical approach," which forbids the court from looking at the actual age of the victim and requires the court to evaluate whether "the least of the acts criminalized by the state statute falls" within a corresponding "generic federal definition" of the crime, the court concluded that a conviction under the California statute was not necessarily sexual abuse of a minor under the INA.
 
 [28]
 

 The court noted that the categorical approach it employed was set forth in
 
 Taylor v. United States
 
 ,
 
 [29]
 
 an early example of a case interpreting the sentencing enhancement provisions of what is now called the Armed Career Criminal Act (ACCA), which increases the sentences of federal defendants who have three prior convictions "for a 'violent felony' " including "burglary, arson, or extortion."
 
 [30]
 
 Courts interpreting ACCA also use "generic" definitions to determine whether a state conviction qualifies as one of these crimes.
 
 [31]
 
 Consulting state court records to determine the nature of a given conviction is generally prohibited, except in cases where a statute is said to be "divisible," that is one that lists elements of the offense in the alternative.
 
 [32]
 

 Neither the INA nor ACCA resembles ASORA in form, purpose, or effect. Further, the
 
 Esquivel-Quintana
 
 and
 
 Taylor
 
 line of cases does not purport to be expressing a constitutional principle that would be binding on state courts when interpreting SORAs. They are simply interpreting particular federal
 statutes. I do not think they provide an analogy that is useful to this case. The opinion of the court does not explain why the court believes they do.
 

 The court may also be implying that, because the court of appeals compares statutory elements and not the underlying facts of an offense when applying the sentence-enhancing provisions of Alaska's presumptive sentencing law, this court should observe a similar limitation under ASORA.
 
 [33]
 
 But the presumptive sentencing law, like the INA and ACCA, is different from ASORA in form, purpose, and effect. Thus the approach taken by the court of appeals does not mean that the same approach is appropriate under ASORA.
 
 [34]
 
 Again, the opinion of the court has offered no explanation as to why it may be concluding that cases interpreting sentence-enhancing provisions should guide our interpretation of ASORA.
 

 Op. at 119 (emphasis in original).
 

 Matthews, Senior Justice, Conc. at 125-26.
 

 Matthews, Senior Justice, Conc. at 126-28, 126 n.11.
 

 Matthews, Senior Justice, Conc. at 128-29 (quoting
 
 State v. Lloyd
 
 ,
 
 132 Ohio St.3d 135
 
 ,
 
 970 N.E.2d 870
 
 , 877 (2012) ).
 

 294 P.3d 1235
 
 (N.M. 2012).
 

 AS 12.63.100(6)(C) (emphasis added).
 

 294 P.3d at 1240
 
 .
 

 Id
 
 . at 1240-41 (bold emphasis added).
 

 I am participating in only one of the cases in this consolidated opinion,
 
 State, Dep't of Publ Safety v. Doe,
 
 S-15821, 425 P.3d 115,
 
 2018 WL 3799927
 
 (2018) (Case No. 3AN-14-08325 CI).
 

 Cal. Penal Code §§ 17
 
 (a), 1170(h), 647.6(a).
 

 AS 11.41.436(b).
 

 By this I mean the complaint or indictment, jury instructions, court findings in a judge-tried case, and plea and sentencing transcripts.
 

 See
 
 Tracy Bateman Farrell, Annotation,
 
 Validity, Construction, and Application of State Statutory Requirement that Person Convicted of Sexual Offense in Other Jurisdiction Register or Be Classified as Sexual Offender in Forum State
 
 ,
 
 34 A.L.R.6th 171
 
 §§ 25-26 (2008) (Westlaw) (database updated March 2017). The Annotation cites only three jurisdictions (Arizona, Massachusetts, and Ohio) as supporting the view that a court may not look beyond the statutory language.
 
 See
 
 id.
 

 § 26. But in light of
 
 State v. Lloyd
 
 ,
 
 132 Ohio St.3d 135
 
 ,
 
 970 N.E.2d 870
 
 (2012), Ohio should no longer be included, and the Arizona case cited by the Annotation,
 
 State v. Kuntz
 
 ,
 
 209 Ariz. 276
 
 ,
 
 100 P.3d 26
 
 , 30 n.3 (Ariz. App. 2004), indicates that the criminal complaint upon which a foreign conviction is based can be considered if incorporated in the judgment. Further, the Arizona legislature, after the decision in
 
 Kuntz
 
 , largely mooted the effect of that decision by amending the Arizona SORA to require registration of any offender who has been required to register in another jurisdiction.
 
 See
 

 State v. Lowery
 
 ,
 
 230 Ariz. 536
 
 ,
 
 287 P.3d 830
 
 , 835-36 (Ariz. App. 2012). Case law in Massachusetts does support the opinion of the court.
 
 See
 

 Doe v. Sex Offender Registry Bd.
 
 ,
 
 456 Mass. 612
 
 ,
 
 925 N.E.2d 533
 
 (2010).
 

 State v. Howe
 
 ,
 
 151 Wash.App. 338
 
 ,
 
 212 P.3d 565
 
 , 567 (2009) (alteration in original) (citations omitted) (quoting
 
 State v. Morley
 
 ,
 
 134 Wash.2d 588
 
 ,
 
 952 P.2d 167
 
 , 175-76 (1998) ). It is worthy of note that Doe II agrees with the approach outlined in
 
 Howe
 
 . This serves to illustrate the point made later in this concurring opinion that deciding between the court's "categorical approach" and the approach I prefer is not necessary to the outcome of this case.
 
 See
 

 infra
 
 p. 129.
 

 State v. Hall
 
 ,
 
 294 P.3d 1235
 
 , 1239-40 (N.M. 2012).
 

 Lloyd
 
 ,
 
 970 N.E.2d at 877
 
 .
 

 This observation is supported by common sense - What else could the legislature have intended? - as well as the legislative history of ASORA. Staff Counsel Doug Wooliver, representing the prime sponsor of the legislation, referred to registration of out-of-state offenders in his explanatory statements to two legislative committees. Wooliver listed the Alaska crimes that would be covered and added that crimes committed elsewhere would also be covered when the person convicted moved to Alaska:
 

 Mr. Wooliver explained the bill covered crimes of sexual assault in the first, second, and third degree; sexual abuse of a minor in the first, second, and third degree; promoting prostitution in the first degree; and incest and unlawful exploitation of a minor. He also explained the bill covered crimes not only committed in Alaska but those in other jurisdictions when those persons moved to Alaska.
 

 Minutes, Sen. Judiciary Comm. Hearing on H.B. 69, 18th Leg., 1st Session, Tape 93-43, side A, no. 505 (Apr. 14, 1993). This clearly implies that those convicted in other jurisdictions of crimes like those listed for Alaska would also have to register. Wooliver made a similar statement to the Senate Finance Committee.
 
 See
 
 Minutes, Sen. Finance Comm. Hearing on H.B. 69, Tape SFC-93, #69, side 2, no. 225 (Apr. 28, 1993). I have seen no other reference to registration for out-of-state convictions in my review of ASORA's history.
 

 Op. at 120-21. New Mexico, which permits consulting court documents in individual cases,
 
 see
 

 Hall
 
 ,
 
 294 P.3d at 1239-40
 
 , is among the jurisdictions the court cites in this discussion. Op. at 120-21.
 

 Lloyd
 
 ,
 
 970 N.E.2d at 877
 
 .
 

 I would join in an opinion so holding.
 

 Our cases have frequently counseled against deciding questions in the abstract. See, for example,
 
 State v. American Civil Liberties Union of Alaska
 
 ,
 
 204 P.3d 364
 
 , 371-73 (Alaska 2009), and cases there cited. "Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication."
 

 Id.
 

 at 372
 
 (quoting
 
 Brause v. State, Dep't of Health & Soc. Servs.
 
 ,
 
 21 P.3d 357
 
 , 359 (Alaska 2001) ).
 

 Op. at 119 (alteration in original) (emphasis in original) (quoting
 
 Esquivel-Quintana v. Sessions
 
 , --- U.S. ----,
 
 137 S.Ct. 1562
 
 , 1568,
 
 198 L.Ed.2d 22
 
 (2017) ).
 

 See, e.g.
 
 ,
 
 Blas v. State, Dep't of Labor & Workforce Dev., Div. of Emp't Sec.
 
 ,
 
 331 P.3d 363
 
 , 373-74 (Alaska 2014) (using "sliding scale" in statutory interpretation and considering legislative history to construe "knowingly" in unemployment compensation disqualification statute). In contrast, the U.S. Supreme Court does not consult legislative history to interpret statutes if it determines the statutory language is plain.
 
 See, e.g.
 
 ,
 
 Lamie v. U.S. Tr.
 
 ,
 
 540 U.S. 526
 
 , 532-34,
 
 124 S.Ct. 1023
 
 ,
 
 157 L.Ed.2d 1024
 
 (2004).
 

 137 S.Ct. at 1567
 
 .
 

 Id.
 

 (quoting
 
 Cal. Penal Code § 261.5
 
 (c) (West 2014) ).
 

 Id.
 

 Id.
 

 at 1569, 1571-72
 
 .
 

 Id.
 

 at 1568
 
 .
 

 Id.
 

 at 1568-72
 
 .
 

 Id.
 

 at 1568 (citing
 
 Taylor v. United States
 
 ,
 
 495 U.S. 575
 
 ,
 
 110 S.Ct. 2143
 
 ,
 
 109 L.Ed.2d 607
 
 (1990) ).
 

 See
 

 Mathis v. United States
 
 , --- U.S. ----,
 
 136 S.Ct. 2243
 
 , 2247-48,
 
 195 L.Ed.2d 604
 
 (2016) (quoting
 
 18 U.S.C. § 924
 
 (e) (2012) ).
 

 Taylor
 
 ,
 
 495 U.S. at 598
 
 ,
 
 110 S.Ct. 2143
 
 .
 

 See
 

 Descamps v. United States
 
 ,
 
 570 U.S. 254
 
 , 257,
 
 133 S.Ct. 2276
 
 ,
 
 186 L.Ed.2d 438
 
 (2013) (describing modified categorical approach and its application).
 

 Op. at 120.
 

 The Court of Appeals of New York addressed the question whether a strict approach taken under a law that served to increase sentences should be used when interpreting New York's SORA.
 
 See
 

 North v. Bd. of Exam'rs of Sex Offenders of N.Y.
 
 ,
 
 8 N.Y.3d 745
 
 ,
 
 840 N.Y.S.2d 307
 
 ,
 
 871 N.E.2d 1133
 
 (2007). The court concluded that there was no persuasive analogy:
 

 We are unpersuaded that the Legislature intended that the SORA "essential elements" inquiry involve the same strict equivalency approach used in the criminal enhanced sentencing context.
 

 ....
 

 ... Certainly words or phrases used in the same legislation or statutory scheme are commonly ascribed the same meaning. Here, however, the language on which petitioner relies appears in distinct legislation enacted in separate statutory schemes that fulfill different functions.
 

 As part of the penal system, enhanced sentencing statutes serve to extend the term of incarceration attending a criminal conviction. In contrast, SORA is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime; its aim is to "protect[ ] communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes." While application of a strict equivalency standard is understandable in the enhanced sentencing context where the length of a defendant's incarceration is to be determined, it may not be the optimal vehicle to effectuate SORA's remedial purposes. The legislative history of SORA does not disclose any intent by lawmakers to import the test from the Penal Law.
 

 Id
 
 .
 
 840 N.Y.S.2d 307
 
 ,
 
 871 N.E.2d at 1137-38
 
 (alteration in original) (citations omitted).