OPINION
{¶ 1} Defendant-appellant, Martin L. Holloman, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated burglary and sentencing him to six years in prison. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On April 25, 2005, defendant was indicted on one count of aggravated burglary, a violation of R.C. 2911.11 and a felony of the first degree. The indictment alleged that defendant broke into an apartment and inflicted, attempted or threatened to inflict physical harm to the occupant of the apartment. Counsel was appointed to *Page 2 
represent defendant. Subsequently, the trial court granted defendant's motion to represent himself. Defendant represented himself at the trial in this case, which was held in late October and early November 2005.
 {¶ 3} Teresa Q. Johnson testified at trial as follows. Ms. Johnson met defendant in September 2004 at a dance for persons recovering from alcohol and drug abuse. She saw him again at another dance at the same facility a few weeks later. On Christmas Eve of that year, Ms. Johnson picked up defendant at a facility called the "Bell Center," and they went on a date. The two got together two or three times in January and more frequently in February 2005. At that point in time, Ms. Johnson considered she and defendant to be dating. In early March 2005, the two traveled together to New York City for shopping and sightseeing. Ms. Johnson financed the trip. Shortly after the New York City trip, Ms. Johnson decided to end the relationship and informed defendant of that decision. At her apartment, Ms. Johnson explained to defendant that she thought she was too old for him, and that she was uncomfortable with his "interrogations" and "impromptu" visits to her apartment. (Tr. Vol. I, 102.) Upon learning of her decision, defendant cried, fell on the floor, and said how he loved her. He eventually left the apartment.
 {¶ 4} A few days later, defendant appeared at the gym where Ms. Johnson exercises and told her that his work hours had changed. The two went to her apartment to talk, and he asked her for "lunch money." (Tr. Vol. I, 104.) Ms. Johnson gave defendant $20 and he left. Later that night, defendant came back, and Ms. Johnson let him sleep at the apartment. She also let him sleep over the following night. The next morning Ms. Johnson told defendant that she did not want to see him anymore. That No. *Page 3 
evening, she heard scratches at the door to her apartment. It was defendant, and he was "balled up." (Tr. Vol. I, 105.) She let him stay that evening and in the morning she told him to leave. She did not see him again until April 12, 2005.
 {¶ 5} Late at night, on April 12, 2005, defendant arrived at Ms. Johnson's apartment. He knocked on her door and windows, screaming at her. She called the police. The police arrived at the apartment and she informed them that she did not want defendant at her apartment. The police spoke with defendant, and he left the area. On the evening of April 13, 2005, defendant again arrived at Ms. Johnson's apartment, knocking on the door and windows and screaming at her. She did not respond to defendant and called the police. The police spoke with defendant and he left.
 {¶ 6} The next day, Ms. Johnson left her apartment to address some business concerns and returned to her apartment at approximately 5 p.m. Defendant was waiting for her on the steps leading to her apartment. Defendant approached her and said that he wanted to repay her money, but he had to go to the bank to get the money. He also told her that he had relapsed. Ms. Johnson walked past him, entered her apartment, locked the door, and called the police. The police arrived and spoke with defendant, and he apparently left the area.
 {¶ 7} Ms. Johnson wanted to leave the apartment, but she needed to send an email. While working on her computer, Ms. Johnson heard someone coming up the steps. Defendant kicked in the apartment door, Ms. Johnson jumped from her computer, he hit her in the right eye and she fell back and hurt her hip. Defendant ran to her bedroom and took her purse. The two "tussled over the purse," he hit her again, she again fell back, and he ran out of the apartment with the purse. (Tr. Vol. I, 113.) Inside the purse was *Page 4 
Ms. Johnson's wallet, which contained cash, a debit card, and other items. Ms. Johnson attempted to run after defendant, but he was able to escape and run down the apartment stairs and down an alley. Ms. Johnson called 911. The recording of the 911 call was played for the jury. In that call, Ms. Johnson told the 911 dispatcher, in part, "He beat me" and "I need an ambulance." As a result of the incident, Ms. Johnson suffered a black eye, a bruised hip, and a sore knee.
 {¶ 8} Columbus Police Officer Sean Wyke testified that he arrived at the apartment within two minutes after he was dispatched to the scene. Upon arrival, he noticed that the door had been kicked open and the doorframe was broken. He observed two footprints on the door. Officer Wyke described Ms. Johnson as "very upset." (Tr. Vol. I, 57.) Officer Wyke testified that it appeared as though a struggle had occurred within the apartment. Officer Wyke did not recall observing any visible injury to Ms. Johnson's face. Another responding Columbus Police Officer, Steve Nace, who earlier that day had been at Ms. Johnson's apartment to urge defendant to leave, testified that when he arrived paramedics were talking with Ms. Johnson. Officer Nace testified that Ms. Johnson was "crying, shaken, kind of trembling voice." (Tr. Vol. II, 25.) He further testified that he did not notice any signs of physical injury to Ms. Johnson, but added that the two paramedics standing next to her were partially obstructing his view of her.
 {¶ 9} Detective Michael Sweet also responded to the apartment on April 14, 2004, after several of the police officers already had arrived. He testified that Ms. Johnson was "traumatized," "shaking," and having difficulty making coherent statements. (Tr. Vol. II, 61.) Later that evening, Detective Sweet talked with Ms. Johnson. At trial, the prosecutor asked Detective Sweet whether Ms. Johnson told him what had occurred that *Page 5 
evening, and defendant objected to that question on the basis of hearsay. The trial court allowed the testimony. Thereupon, Detective Sweet testified regarding what Ms. Johnson told him relating to what had occurred that evening. When asked whether he noticed any marks or injuries on Ms. Johnson's person, Detective Sweet testified that "[t]here was some minor redness about [her] face," and added that "other than that, she didn't seem physically injured." (Tr. Vol. II, 63.) Detective Sweet further testified that the redness "was consistent with some type of confrontation." (Tr. Vol. II, 72.)
 {¶ 10} Columbus Division of Fire Firefighter and Paramedic Terone Gordon was dispatched to Ms. Johnson's apartment in response to a reported injury. Paramedic Gordon noticed that the door to the apartment was lying on the floor, and he described Ms. Johnson as "upset and crying." (Tr. Vol. I, 66.) He testified that one of Ms. Johnson's cheeks was red "and maybe a little swollen." (Tr. Vol. I, 72.)
 {¶ 11} After the incident, Ms. Johnson stayed at the home of her friend, Barbara Merritt. Ms. Merritt testified that Ms. Johnson appeared "very nervous" and that Ms. Johnson's face was "bruised and puffy" and "she was moving kind of slow." (Tr. Vol. I, 179, 182.) The next day, Ms. Johnson returned to the area of her apartment with Ms. Merritt. As she was previously advised, Ms. Johnson contacted the police before approaching the apartment. Columbus Police Officer Teresa Jarrell was dispatched to the scene. Ms. Johnson saw defendant approaching the apartment complex, and she informed Officer Jarrell of defendant's presence in the area. Officer Jarrell arrested defendant. At the time of his arrest, defendant was carrying a backpack that contained *Page 6 
items that belonged to Ms. Johnson, including her identification and debit card.[1] Officer Jarrell testified that, even though she physically saw Ms. Johnson that day, she did not take notice of whether Ms. Johnson had a black eye or any bruising on her face.
 {¶ 12} Claudia Shine, Ms. Johnson's neighbor who was called as a witness on behalf of the defendant, testified that Ms. Johnson told her that defendant kicked, punched, and tried to kill her.
 {¶ 13} Defendant testified on his own behalf. Defendant described the circumstances of how he met Ms. Johnson, while he was at the Bell Center, as well as the progression of their dating relationship. He testified regarding their trip to New York City. He testified that, after returning from New York City, defendant introduced Ms. Johnson to a realtor so they could look for a house. At some point, defendant moved out of the Bell Center and stayed at Ms. Johnson's apartment. Defendant understood that he could stay at her apartment until he found other arrangements. The next day, defendant worked the late shift, and in the following morning he went out with a coworker to drink beers and liquor. Before it was time for him to work that evening, he went to Ms. Johnson's apartment. Ms. Johnson let him in the apartment and scolded him for relapsing. He slept at her apartment that night, and the next day he went to work. Defendant was arrested on his way to work for his failure to report to the Bell Center. He was in jail for approximately two weeks until his parole officer lifted the parole holder. The day of his release he went to Ms. Johnson's apartment and she called the police. According to defendant, the police told him that Ms. Johnson no longer wanted to be in a relationship *Page 7 
with him. The next night he went drinking and again went to Ms. Johnson's apartment.Again, Ms. Johnson called the police and he left.
 {¶ 14} Defendant testified that he called Ms. Johnson on April 14, 2005, and asked her why she had the police inform him that she did not want to be with him anymore. He wanted to talk to her and told her he would go to her apartment. He sat on the steps leading to her apartment and waited for her. When Ms. Johnson arrived, the two went up to the apartment and talked. Ms. Johnson informed him that she wanted to end their relationship. Defendant took trash from Ms. Johnson's apartment to the dumpster in the parking lot. He intended to return to the apartment to retrieve his belongings and leave. However, Ms. Johnson had locked the door. Defendant banged on the door and Ms. Johnson called the police. Once a police officer arrived, defendant left the area. Defendant testified that he returned and "kicked the door in." (Tr. Vol. II, 130.) According to defendant's testimony, Ms. Johnson "lunged" at him, and he "dodged" her on his way to the bedroom where he grabbed his "Eddie Bauer bag." (Tr. Vol. II, 130-131.) He returned to the living room where Ms. Johnson hung up the telephone, again lunged at him, and grabbed at the bag. Believing that the police had been contacted and were on their way, he fled the apartment and ran down the alley. In his testimony, defendant denied hitting Ms. Johnson or attempting to harm her. In addition, he testified that he was surprised to find her belongings in the bag he had taken, but he admitted to keeping the money in the bag and attempting to use her bank card.
 {¶ 15} At the conclusion of trial, the jury found defendant guilty of aggravated burglary, as charged in the indictment. The trial court held a sentencing hearing on December 5, 2005, and sentenced defendant to six years in prison. *Page 8 
 {¶ 16} Defendant timely appeals and assigns the following two assignments of error for our review:[2]
 Assignment of Error No. 1
 The verdict of guilty of aggravated burglary was against the manifest weight of the evidence.
 Assignment of Error No. 2
 The trial court erred in allowing a witness for the State of Ohio to testify about the extrajudicial statements of Teresa Q. Johnson which was offered for the truth of the matter asserted.
 {¶ 17} By his first assignment of error, defendant argues that his aggravated burglary conviction was against the manifest weight of the evidence. Defendant argues that, upon weighing the evidence, this court should find that, while he may have been guilty of burglary, he was not guilty of aggravated burglary. Defendant does not challenge the legal sufficiency of the evidence.
 {¶ 18} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. *Page 9 
 {¶ 19} However, when assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine " `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 20} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony." State v. Woodward, Franklin App. No. 03AP-398, 2004-Ohio4418, at ¶ 18, citing State v. Wright, Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. Thus, this court must give great deference to the factfinder's determination of witnesses' credibility. See Wright, at ¶ 11. Furthermore, " `[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "Thompkins, at 387.
 {¶ 21} Defendant acknowledges that, in his opening statement at trial, and in his trial testimony, he admitted to committing all the elements of burglary, a violation of R.C. 2911.12. However, he denied that he struck Ms. Johnson. In spite of defendant's testimony, he was found guilty of the offense of aggravated burglary, a violation of R.C.2911.11. R.C. 2911.11 provides, in pertinent part, as follows:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than *Page 10 
 an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
 {¶ 22} The central factual dispute at trial was whether defendant inflicted physical harm on Ms. Johnson. Essentially, by his first assignment of error, defendant argues that the jury lost its way and created a manifest miscarriage of justice in finding that defendant inflicted physical harm on another. The Ohio Revised Code defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3). In addition, "[t]here is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm." State v. Lohr, Lorain App. No. 03CA008265,2004-Ohio-1609, at ¶ 6.
 {¶ 23} Defendant asserts that the police testimony did not uniformly support Ms. Johnson's allegation that defendant struck her. In support, defendant cites the testimony of the police and paramedic responders to the scene of the incident. In addition, in his reply brief, defendant cites the jury's questions regarding the meanings of "threat" and "threatened" for purposes of deliberation as somehow demonstrating that the jury did not believe Ms. Johnson's testimony that he struck her. Defendant does not challenge the trial court's answers to those questions, but he speculates as to why the jury asked certain questions in relation to its deliberations. Essentially, defendant speculates that the jury's submission of questions regarding "threat" and "threatened" demonstrated that the jury did not believe Ms. Johnson's testimony that defendant had struck her and must have convicted him upon a finding that he threatened to inflict *Page 11 
physical harm. In that regard, defendant asserts that there was no evidence that defendant threatened to inflict No. 06AP-01 physical harm on Ms. Johnson. Thus, pursuant to defendant's reasoning, the conviction was against the manifest weight of the evidence. We find defendant's arguments to be unpersuasive.
 {¶ 24} At trial, Ms. Johnson testified that defendant struck her in her right eye and her left cheek, causing her to fall and injure her knee and hip. Defendant testified on his own behalf, denying that he struck Ms. Johnson. The testimony of various witnesses at trial varied in their recollection and/or description of Ms. Johnson's face after the incident. Officer Wyke testified that he did not recall observing any visible injuries to Ms. Johnson when he responded to the scene within minutes of being dispatched. Officer Nace testified that he did not notice any physical injuries to Ms. Johnson's person, but noted that his view of her was obstructed by the paramedics. Officer Sweet noticed "some minor redness" about Ms. Johnson's face when he interviewed her after the incident, but other than that, he did not observe physical injury. Paramedic Gordon noticed that Ms. Johnson's cheek was red and "maybe a little swollen." Ms. Merritt described Ms. Johnson's face as "bruised and puffy."
 {¶ 25} Ms. Johnson's testimony provided direct evidence that defendant struck her. Other evidence indicated that Ms. Johnson may have had some redness or swelling on her face, which provided circumstantial evidence that she had been struck. The evidence of redness or swelling essentially corroborated Ms. Johnson's testimony that defendant struck her in the face but was legally unnecessary for the jury to convict defendant of aggravated burglary because physical harm to a person need not be demonstrated by an outward physical manifestation of injury. SeeLohr, supra. Simply because the evidence was not uniform in regard to whether any physical injuries to Ms. *Page 12 
Johnson were observable after the incident, did not render the jury's verdict against the manifest weight of the evidence. It was within the province of the jury to determine that at least certain aspects of defendant's testimony were not credible, and to otherwise resolve any evidentiary inconsistencies. Moreover, we will not engage in speculation as to why the jury asked certain questions for purposes of its deliberations. Based on our review of the evidence we cannot conclude that the jury lost its way in convicting defendant of aggravated burglary.
 {¶ 26} Accordingly, we overrule defendant's first assignment of error.
 {¶ 27} In his second assignment of error, defendant argues that the trial court erred in allowing a certain hearsay statement into evidence. Specifically, defendant contends that the trial court erred in allowing Detective Sweet to testify as to what Ms. Johnson told him regarding what had occurred at her apartment on the evening of April 14, 2005. Defendant contends that the hearsay statement of Ms. Johnson was inadmissible and he was prejudiced by the admission of the statement at trial. The state argues that it was within the trial court's discretion to admit the testimony, and, even if the trial court did abuse its discretion, Detective Sweet's testimony regarding Ms. Johnson's statements to him were merely cumulative to Ms. Johnson's trial testimony and thus harmless error.
 {¶ 28} "A trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to the defendant." State v. Rowe (1993), 92 Ohio App.3d 652,665, citing State v. Hymore (1967), 9 Ohio St.2d 122. See, also,Schultz v. Schultz (1996), 110 Ohio App.3d 715, 726, citingKrischbaum v. Dillon (1991), *Page 13 58 Ohio St.3d 58, 66 (stating, in part, that "[i]n the absence of an abuse of that discretion which results in a material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings").
 {¶ 29} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the "abuse of discretion" standard, an appellate court is not free to merely substitute its judgment for that of the trial court. State v. Sibert (1994), 98 Ohio App.3d 412, 424.
 {¶ 30} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Regarding the admissibility of hearsay, Evid.R. 802 provides as follows: "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 31} When the prosecutor asked Detective Sweet whether Ms. Johnson told him what happened on the evening of the incident, defendant objected to the question, asserting hearsay as the basis of the objection. The trial court overruled the objection, stating that it would permit it under the circumstances. Responding to the prosecutor's question, the detective stated:
 She stated that, that a man that she knew had come by her house, her apartment. She had told him to go away. She had gone back to sitting down in the living room area. The door was kicked open and he, as he came through the doorway she got up to confront him, he struck her, knocked her down into the furniture. For some reason, then went to *Page 14 
 the back of the house, and on her bedroom door was her purse and the gentleman grabbed her purse and started to go out again. And Ms. Johnson tried to stop him, grabbing the purse, and then, once again, he pulled the purse, wouldn't let her keep the purse and knocked her down and fled out the door.
(Tr. Vol. II, 62.)
 {¶ 32} Even assuming arguendo that the challenged statements were improperly admitted, defendant has failed to demonstrate prejudicial error. Any error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature. See, e.g., State v. Turner, Franklin App. No. 04AP-364, 2004-Ohio6609, citing State v. Tomlinson (1986), 33 Ohio App.3d 278, 281.
 {¶ 33} In this case, Ms. Johnson, on direct examination, provided a detailed account of what occurred in her apartment on the evening of April 14, 2005. Her testimony indicated, inter alia, that defendant kicked open her apartment door, that he struck her in the face on his way to take her purse, which caused her to fall back, that he grabbed her purse, and, on the way out of the apartment, he struck her another time, which again caused her to fall back. Defendant cross-examined Ms. Johnson regarding the incident, and he attempted to discredit her testimony. In fact, that cross-examination included a series of questions concerning what Ms. Johnson told Detective Sweet after the incident. Thus, defendant was provided the opportunity to cross-examine the declarant on the subject matter of what occurred in her apartment on April 14, 2005. In addition, upon a review of the evidence, it is clear that Detective Sweet's testimony regarding what Ms. Johnson told him was merely cumulative of Ms. Johnson's trial *Page 15 
testimony. Thus, we conclude that any error in the admission of the challenged hearsay was harmless.
 {¶ 34} Therefore, we overrule defendant's second assignment of error.
 {¶ 35} Having overruled both of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER, P.J., and McGRATH, J., concur.
[1] Evidence at trial revealed that defendant attempted to use Ms. Johnson's bank card to withdraw cash from an automated-teller machine before he was arrested in the area of Ms. Johnson's apartment.
[2] During the pendency of this appeal, defendant filed in the trial court a pro se petition for postconviction relief pursuant to R.C.2953.21. The trial court denied the petition, and this court affirmed the judgment of the trial court. See State v. Holloman, Franklin App. No. 06AP-608, 2006-Ohio-6789. *Page 1