[Cite as *State v. Karns*, 2021-Ohio-1836.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-35 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-321 |
| | : | |
| JEFFREY A. KARNS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of May, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 5335 Far Hills Avenue, Suite 109, Dayton, Ohio 45429
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant Jeffrey A. Karns appeals from his conviction for domestic violence, following a jury trial. According to Karns, his conviction was based on insufficient evidence, because his prior conviction from Indiana is not substantially similar to a conviction under R.C. 2919.25. Karns also contends that his conviction was against the manifest weight of the evidence.

{¶ 2} At trial, Karns stipulated to a prior conviction for domestic battery under Ind.Code 35-42-2-1.3, which was used to enhance his domestic violence charge to a third-degree felony. Under a plain error review, there was no error in using the prior conviction to enhance the degree of the offense, because the Indiana statute and R.C. 2919.25(A) are substantially equivalent. Karns's conviction also was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 3} On June 5, 2020, an indictment was filed in the Greene County Common Pleas Court charging Karns with domestic violence for having knowingly caused or having attempted to cause physical harm to a family or household member in violation of R.C. 2919.25(A). The domestic violence charge was elevated to a third-degree felony due to Karns's two prior convictions for domestic violence: one in Greene County, Ohio, and another in Indiana.

{¶ 4} The charge against Karns arose from an incident that occurred on May 25, 2020, at a residence in Fairborn, Ohio, where Karns and the victim, M.L., were living. Transcript of Jury Trial and Sentencing Hearing ("Tr."), p. 14, 24, and 56. M.L. had lived

at the house, which she leased, for about six years before the incident. *Id*. at p. 56 and 59. M.L. and Karns were involved romantically, and Karns had been living at the house for a little over a year. *Id*. at p. 58. Normally, M.L. worked during the week, but she was off work for the holiday (Memorial Day) and for COVID-19 testing. *Id*. at p. 57.

{¶ 5} On Memorial Day, M.L. woke up between 8:30 and 9:30 a.m. *Id*. at p. 61. M.L. has two children, but only her daughter, age four, was with her that day. *Id*. At some point during the morning, Karns wanted to drive M.L.'s car to the grocery, but she refused because he did not have a driver's license. *Id*. at p. 62-63. However, M.L. did take Karns to Kroger and waited in the car with her daughter. She then drove to a drive-thru so Karns could get beer. *Id*. at p. 63. After that, they returned home. M.L. could tell that Karns was in a bad mood and wanted to avoid it, so she took her daughter to a thrift store around 11:30 a.m. She then went to her cousin's house and to her father's house before returning home. *Id*. at p. 64-65.

{¶ 6} The plan that day had been for M.L. to pick up Karns's two children from their mother's house, but M.L. texted her and asked if she would bring them over. *Id*. at p. 64. When M.L. arrived back home around 4:30 or 5:00 p.m., Karns and his two sons, ages four and seven, were there and were preparing to walk to the drive-thru or gas station. *Id*. at p. 65-66. There was a discussion about returning Karns's children to their mother after they got back from the store, and Karns and M.L. had an argument. *Id*. at p. 66.

{¶ 7} At the time, M.L. was in her son's bedroom, picking up clothes. M.L. could tell that Karns was intoxicated. Karns got in her face, and M.L. told him that she could not take it anymore, and that she did not want to be with him. Tr. at p. 66-67. Karns said he was going to drive his children home in M.L.'s car, and she told him no. At that

point, Karns grabbed M.L. by her hair, which hurt. There was then a lot of pushing and shoving on Karns's part. He dragged M.L. around, through her son's room, to a doorway where the kitchen and bathroom were. *Id.* at p. 67-68. That was not the end of the argument, though. Karns kept trying to take M.L.'s keys, and she kept saying no. *Id.* at p. 68.

{¶ 8} At some point, the argument turned physical again. Karns kept trying to shove M.L. out to take the children home. Because Karns's children were playing in puddles, were wet, and did not have a change of clothing, M.L. wanted to get towels from the bathroom to put down in her car. *Id.* at p. 69. Karns kept shoving M.L., and she was shoved into the bathtub. When that happened, the shower curtain came down with her. *Id.* at p. 69-70 and 94. M.L. felt pain to the back of her arm and believed she had hit her elbow on the tub or tile. Karns then yanked M.L. out of the bathtub and with his hand on her neck and held her up against the back wall of the bathroom. M.L. also felt discomfort or pain at that time. *Id.* at p. 69-70.

{¶ 9} After the argument, M.L. left the house without her shoes and her phone, as Karns would not let her use the phone to call his children's mother to pick them up or to call the police. M.L. then took Karns's children to their mother's house and dropped them off. *Id.* at p. 71-72, and 74-75. From there, M.L. drove to the house of her daughter's aunt (B.J.), who lived around the corner from M.L. At that point, M.L. wanted someone with her for safety, and she also wanted to use B.J.'s phone to call the police. *Id.* at p. 75. B.J. and M.L.'s son, who apparently was visiting with B.J., then got into the car. M.L. wanted to go back to her house to get her purse, cigarettes, and cell phone. She later discovered that Karns had broken her phone. *Id.* at p. 72 and 75-76.

{¶ 10} However, when M.L. pulled up in front of her house, Karns came out. At first, Karns did not see that she had someone else in the car. When he did, he told her to "to go ahead and get Jonny Law out here." As they were backing out of the driveway, B.J. called 911 (Fairborn Dispatch) and gave the phone to M.L. After speaking to the dispatcher, M.L. drove around the corner and waited for the police to arrive; when they did so, she went back to her own house. Tr. at p. 77.

{¶ 11} During the 911 call, M.L. did not initially say that Karns had placed his hands on her, although she told them that later. She explained that by saying that she did not describe what had happened because she had two children in the car and they had already seen a lot. Id. at p. 78 and 81.

{¶ 12} As a result of the 911 call, two City of Fairborn Patrol Officers (Mark Kohler and Cara Foreman) were dispatched to M.L.'s residence. The call initially was for a peace officer, but subsequently changed to report an earlier domestic violence incident. (Calls for peace officers are civil matters and are typically used for property pick-up or child exchanges.) Id. at p. 16-17 and 41-42. Both officers arrived about the same time, around 6:00 p.m. Id. at p. 17 and 29. They walked up to the driveway and began speaking with the female who had called them. Id. at p. 18. At that point, a male (Karns) came out of the house and started talking to the police. Karns appeared angry and was yelling at them that they did not need to do anything and that the female was lying. Id. at p. 18-19. The police had not yet told Karns what the female was saying. Id. at p. 20.

{¶ 13} Officer Kohler told Karns to go back into the house and that he would speak to him shortly about what the female was communicating. However, Karns continued to yell. At that point, Kohler began walking toward Karns and eventually walked inside the

house with him. *Id.* Kohler could smell alcohol on Karns, and Karns was carrying a drink. *Id.* at p. 21.

{¶ 14} Officer Foreman stayed outside and talked with M.L., who then began telling her about the incident that had occurred earlier. While they were talking, Foreman observed injuries on M.L., who pointed to an injury to her left-elbow area where there was some bruising and redness. M.L.'s neck was also red. These injuries were visible to Foreman. Tr. at p. 44 and 46. After this conversation, the nature of the call changed to a domestic violence incident. *Id.* at p. 45.

{¶ 15} Foreman then went into the house and told Kohler what M.L. had said. Initially when Kohler was alone in the house with Karns, Karns was relatively calm. However, when Karns learned of the allegations, he began getting angry and upset again. At that point, Kohler decided to call for other officers in case of an altercation, and Fairborn Police Officers Walton, Hunsbarger, and Lightner responded. *Id.* at p. 22, 23, and 24. While he was with Karns, Kohler did not see any scratches, bite marks, or visible injuries on Karns. *Id.* at p. 38.

{¶ 16} After the additional officers arrived, Karns was taken into custody and was told he was being arrested for one count of domestic violence. Karns was angry and protested, but he did cooperate initially by turning around and putting his hands behind his back. *Id.* at p. 24-25. Karns did not wish to walk out easily, however; as a result, two officers picked him up by the arms and carried him out. *Id.* at p. 25. When Karns was carried to the police cruiser, he was yelling and screaming. *Id.* at p. 49.

{¶ 17} Officer Hunsbarger assisted Kohler by taking photos of the scene and the victim. Hunsbarger saw and documented a bruise on M.L.'s arm and an injury to her

neck, which he described as redness. Tr. at p. 114, 115, and 117, and State's Exhibits 4 and 6. Hunsbarger also took a photo of the bathroom, which indicated that the shower rod was back up. *Id.* at p. 36, 94, 121, and 125 and Defendant's Ex. F. M.L. testified that this was not how the shower rod looked when she left the house. *Id.* at p. 73.

{¶ 18} After the incident, the police offered M.L. medical attention for her injuries, but she declined. *Id.* at p. 26 and 95. The following day, Fairborn Police Detective Alan Kraker received the case for follow-up. When he did so, he followed standard protocol. *Id.* at p. 129. For almost four years, Kraker had been the detective in charge of domestic violence investigations. *Id.* at p. 136.

{¶ 19} About four days elapsed before Kraker was contacted by M.L., who said she had been waiting for a new phone to call him back because her phone had been damaged during the incident. *Id.* at p. 131. Kraker and M.L. spoke about the incident, and what she reported appeared consistent with what Kraker had learned from the 911 call, Officer Kohler's report, and M.L.'s written statement. *Id.* Kraker presented the information to the grand jury on June 3, 2020, and an indictment was filed on June 5, 2020.

{¶ 20} On June 19, 2020, Karns was arraigned and pled not guilty. The court then held a jury trial on August 24 and 25, 2020, after which the jury found Karns guilty as charged. At a sentencing hearing held on August 27, 2020, the court sentenced Karns to 36 months in jail, with 95 days jail credit, and imposed a $5,000 fine. Karns timely appeals from his conviction.

## II. Sufficiency of the Evidence

{¶ 21} Karns's First Assignment of Error states that:

Mr. Karns's Conviction for a Third Degree Felony of Domestic Violence Was Without Sufficient Evidence, Because the Stipulation of His Prior Conviction from Indiana Was Not Substantially Similar to a Conviction Under R.C. 2919.25.

{¶ 22} Under this assignment of error, Karns contends that R.C. 2919.25(A) and the statute involved in his Indiana domestic violence conviction are not substantially similar, and that, as a result, the Indiana conviction should not have been used to enhance the degree of his offense and his sentence. In response, the State argues that we may review only for plain error because Karns did not raise this issue at trial. The State also maintains that the statutes are substantially similar.

{¶ 23} "A sufficiency of the evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.* at ¶ 9.

{¶ 24} In addressing the arguments, we first note that, rather than simply failing to raise this issue at trial, Karns actually stipulated that the Ohio and Indiana statutes are substantially similar. At trial, the parties stipulated to the following facts:

Number 1 – The Defendant, Jeffrey A. Karns, has twice previously been convicted of an offense of violence where the victim in each of the prior two offenses of violence was a family or household member, to wit: Domestic Violence in Greene County Court of Common Pleas, case number 2017 CR 0196; and Domestic Battery, in Montgomery County Municipal Court, Indiana, case number 54C01010CM00134.

Number 2: The offense of Domestic Battery, as codified under the law of the State of Indiana, is substantially similar to the offense of Domestic Violence, as codified under the law of the State of Ohio.

Tr. at p. 127-128. The court then included these stipulations in its instructions to the jury. *Id.* at p. 192.

{¶ 25} By failing to object, Karns waived any error. *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 71. In this circumstance, we consider the matter only if the defendant shows that "an error occurred, that it was plain, and that it affected his substantial rights." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). An error is "a deviation from a legal rule." *Barnes* at 27. "To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings." *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90

(2001). (Other citation omitted.) And, to be substantial, "the trial court's error must have affected the outcome of the trial." *Id.*

{¶ 26} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *Id.* The Supreme Court of Ohio has also "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 27} After review, we find that the first prong of the plain error doctrine has not been satisfied, because there was no legal error. This is based on the fact that the statutes in question are substantially equivalent.

{¶ 28} Regarding whether criminal statutes are similar, the Supreme Court of Ohio has held that:

[I]n order to determine whether an out-of-state conviction is substantially equivalent to a listed Ohio offense, a court must initially look only to the fact of conviction and the elements of the relevant criminal statutes, without considering the particular facts disclosed by the record of conviction. If the out-of-state statute defines the offense in such a way that the court cannot discern from a comparison of the statutes whether the offenses are substantially equivalent, a court may go beyond the statutes and rely on a limited portion of the record in a narrow class of cases where the factfinder

was required to find all the elements essential to a conviction under the listed Ohio statute. To do so, courts are permitted to consult a limited range of material contained in the record, including charging documents, plea agreements, transcripts of plea colloquies, presentence reports, findings of fact and conclusions of law from a bench trial, jury instructions and verdict forms, or some comparable part of the record.

*State v. Lloyd*, 132 Ohio St.3d 135, 2012-Ohio-2015, 970 N.E.2d 870, ¶ 31 (finding the "modified categorical approach" followed in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), to be "apt"). Accordingly, we will first review the statutes involved to decide if they are substantially equivalent.

**{¶ 29}** Karns was charged with having violated R.C. 2919.25(A), which provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶ 30}** Where, as here, an individual has previously been convicted twice of domestic violence, the crime is elevated to a third-degree felony. R.C. 2919.25(D)(4). For this enhancement to occur, each offense used for enhancement must meet the following definition in R.C. 2919.25(D)(3), i.e., that:

[T]he offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim

of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense,

{¶ 31} R.C. 2919.25(D)(3) uses the term "substantially similar," which is close to "substantially equivalent." In *Lloyd*, the supreme court stated:

[T]he Ohio statutory phrase "*substantially* equivalent" expressly leaves room for potential distinctions between the out-of-state statute and the relevant Ohio statute. *Miller v. Cordray*, 184 Ohio App.3d 754, 2009-Ohio-3617, 922 N.E.2d 973, ¶ 15; *Core v. State*, 191 Ohio App.3d 651, 2010-Ohio-6292, 947 N.E.2d 250, ¶ 13. "Equivalent" means "like in signification or import." *Webster's Third New International Dictionary* 769 (1986). The General Assembly chose to modify "equivalent" with "substantially," which means "being that specified to a large degree." *Id.* at 2280. It is similarly defined as " 'being largely but not wholly that which is specified.' " *Swan Creek Twp. v. Wylie & Sons Landscaping*, 168 Ohio App.3d 206, 2006-Ohio-584, 859 N.E.2d 566, ¶ 28, quoting *Merriam Webster's Collegiate Dictionary* 1174 (10th Ed.1996). "Substantially" is the operative word.

(Emphasis sic.) *Lloyd*, 132 Ohio St.3d 135, 2012-Ohio-2015, 970 N.E.2d 870, at ¶ 28.

{¶ 32} According to Karns, the Indiana statute in question, Ind.Code 35-42-2-1.3,

is not substantially similar to R.C. 2919.25 because it does not require a finding of physical harm or injury. As indicated, one of Karns's prior domestic violence convictions was for domestic battery in an Indiana case.

**{¶ 33}** The public records for the Montgomery Circuit Court indicate that Karns was charged on September 24, 2007, with having committed "Domestic Battery," in violation of Ind.Code 35-42-2-1.3.[1] After Karns pled guilty, the court found him guilty of a class A misdemeanor on May 9, 2008.

**{¶ 34}** Ind.Code 35-42-2-1.3 was enacted in 1999 and was amended several times thereafter. The version in effect at the time of Karns's 2007 charge and his 2008 conviction provided, in pertinent part, that:

A person who knowingly or intentionally touches an individual who:

(1) is or was a spouse of the other person;

(2) is or was living as if a spouse of the other person as provided in subsection (b); (c); or

(3) has a child in common with the other person;

in a rude, insolent, or angry manner *that results in bodily injury* to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

---

[1] *See* https://public.courts.in.gov/mycase#/vw/CaseSummary/ (accessed on May 4, 2021). We are allowed to take judicial notice of public records that are accessible on the internet. *E.g., State v. Derrick*, 2d Dist. Montgomery No. 28878, 2021-Ohio-1330, ¶ 9. As noted, the stipulation stated that Karns's case was in Montgomery Municipal Court and that the case number case was 54C01010CM00134. Tr. at p. 127-128. However, the case number was actually 54C01-0710-CM-000134, and the court was the Montgomery Circuit Court in Montgomery County, Indiana. Montgomery County does not have a municipal court. It has one circuit court and two superior courts. *See* https://www.in.gov/courts/local/montgomery-county/ (accessed on May 4, 2021).

(Emphasis added.)   2006 Ind. Legis. Serv. P.L. 129-2006 (H.E.A. 1281), Section 1.

{¶ 35} This version was effective until February 22, 2012, when it was further amended, but not in any manner relevant here.   *See* 2012 Ind. Legis. Serv. P.L. 6-2012 (H.E.A. 1009), Section 225.   Specifically, the amended statute still contained the requirement of "bodily injury."   However, effective July 1, 2014, this term was removed from Ind.Code 35-42-2-1.3, and it has not again been part of the statute.   *See* 2013 Ind. Legis. Serv. P.L. 158-2013 (H.E.A. 1006), Section 421.

{¶ 36} Accordingly, Karns is simply incorrect in arguing that Indiana's statute did not require bodily injury at the time of his conviction.   That may be true at the present time, but when Karns was charged and convicted, Ind.Code 35-42-2-1.3 did require that the offender's act result in bodily injury.   This is very similar to the requirement in R.C. 2919.25(A) that an offender must cause or attempt to cause physical harm.   Ohio's statute is a bit broader, in also allowing an attempt to cause harm to suffice, but that is not significant.   Statutes must be substantially or "to a large degree" alike; they need not be identical.   *Lloyd*, 132 Ohio St.3d 135, 2012-Ohio-2015, 970 N.E.2d 870, at ¶ 28.

{¶ 37} Furthermore, while not critical to the analysis, Indiana's definition of "bodily injury" is also substantially similar to Ohio's definition.   *See Bailey v. State*, 979 N.E.2d 133, 135-36 (Ind.2012) (noting that under Ind.Code. 35-31.5-2-29, bodily injury is defined as " 'any impairment of physical condition, including physical pain.' ")   In *Bailey*, the Supreme Court of Indiana concluded that, under this statute, "physical pain is an impairment of physical condition," and that "any degree of physical pain may constitute a bodily injury."   *Id.* at 138 and 142.   Thus, the court held that sufficient evidence existed to support the defendant's domestic violence conviction where his wife testified "that she

was shoved and repeatedly poked in the forehead and that each of these acts caused her pain." *Id.* at 142.

{¶ 38} Similarly, R.C. 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." As in Indiana, Ohio courts have held that " '[t]here is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm.' " *State v. Holloman*, 10th Dist. Franklin No. 06AP-01, 2007-Ohio-840, ¶ 22, quoting *State v. Lohr*, 9th Dist. Lorain No. 03CA008265, 2004-Ohio-1609, ¶ 6. *See also State v. Johnson*, 2d Dist. Greene No. 88-CA-83, 1989 WL 43040, *4 (Apr. 27, 1989) ("physical harm, as defined in R.C. 2901.01(C),[2] is defined broadly enough to include the infliction of pain by grabbing all, or some portion, of the male genital organ"); *State v. Neff*, 10th Dist. Franklin No. 92AP-655, 1992 WL 250253, *2 (Sept. 30, 1992) (grabbing of victim, jerking him around very hard and causing him pain was physical harm); *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 36 (1st Dist.) (defendant grabbed victim's face, causing her pain).

{¶ 39} In light of Karns's Indiana conviction and the fact that the elements of Ind.Code 35-42-2-1.3 and R.C. 2919.25(A) are substantially equivalent, our analysis is complete, and we need not review the factual basis of Karns's prior conviction. *Lloyd*, 132 Ohio St.3d 135, 2012-Ohio-2015, 970 N.E.2d 870, at ¶ 31. Accordingly, no legal error occurred when the trial court instructed the jury that Karns's prior conviction for

---

[2] The definition of "physical harm" noted in *Johnson* is the same as the definition now found in R.C. 2901.01(A)(3). *See Johnson*, 2d Dist. Greene No. 88-CA-83, 1989 WL 43040, at *4 ("Physical harm is defined in R.C. 2901.01(C) as 'any injury, illness or other physiological impairment, regardless of its gravity or duration.' ")

domestic battery was substantially similar to domestic violence as codified by the State of Ohio.

{¶ 40} Even if we were to find that some error occurred in the stipulation with respect to the Indiana case number and the court's name, any such error would have been harmless.   These appear to be in the nature of typographical or clerical errors and did not affect the fact that Karns was previously convicted of domestic battery in Indiana for purposes of enhancing the crime to a third-degree felony.   This would not be the kind of error that presents " 'exceptional circumstances,' " and warrants reversal " 'to prevent a manifest miscarriage of justice.' "   *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 41} Since either no error occurred or only harmless error occurred, there is no basis for setting aside the judgment under the plain error doctrine.   Accordingly, the First Assignment of Error is overruled.


III.   Manifest Weight

{¶ 42} Karns's Second Assignment of Error states that:

Mr. Karns's Conviction is Against the Manifest Weight of the Evidence.

{¶ 43} Under this assignment of error, Karns contends that his conviction was against the manifest weight of the evidence because the testimony the State presented contradicted to the photographic evidence.   In this regard, Karns mentions that M.L. testified that Karns threw her into the bathtub and ripped down the shower rod, but photographs show the rod was not down when the police photographed the scene. Karns also relies on his contention that Indiana's domestic battery statute is not

substantially similar to Ohio's statute because it lacks the element of physical harm.

{¶ 44} In situations involving a manifest weight challenge, a court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).   *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶ 45} Another important principle to bear in mind is that appellate courts should cautiously exercise their discretionary power of finding that judgments are against the manifest weight of the evidence.   This is because factfinders see and hear the witnesses and are uniquely qualified to decide whether, and to what extent, to credit their testimony. As a result, we give substantial deference to credibility decisions of factfinders.   *State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 59 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 46} Our review of the record indicates that the judgment of conviction was not against the manifest weight of the evidence.   As a preliminary point, we note that we have already rejected the argument about Indiana's domestic battery statute. Furthermore, the fact that the shower curtain rod was back in place when photographs were taken is irrelevant.   The police arrived at the scene between an hour to an hour and a half after the incident occurred.   Therefore, Karns had ample time to put the rod back

in place.

{¶ 47} As indicated, R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." We have already discussed the fact that physical harm includes pain and impact that causes pain. Here, the victim testified that she sustained injury to her elbow and neck during the struggle, and two police officers observed visible injury to those places. The victim also testified that she experienced pain. Tr. at p. 46, 70, 71, 94, and 115.

{¶ 48} As pertinent here, R.C. 2919.25(F)(1) defines a family or household member as "(a) Any of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender * * *." R.C. 2919.25(F)(2) further provides that " 'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

{¶ 49} The Supreme Court of Ohio has said that "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." *State v. Williams*, 79 Ohio St.3d 459, 465, 683 N.E.2d 1126 (1997).

{¶ 50} The court later clarified *Williams*, noting that where the proof established that the defendant was the victim's boyfriend and that they lived together, "the state had

no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation." *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, ¶ 15. Nonetheless, all these factors were established here. The evidence in the record indicates that Karns and M.L. were involved in a romantic relationship, had lived together for over a year, had sexual relations, showed affection for each other, and supported each other, emotionally and financially or otherwise. Karns also looked after M.L.'s children while she worked. Tr. at p. 58-61.

{¶ 51} We have previously discussed the fact that Karns had two prior convictions for purposes of the enhancement in R.C. 2919.25(D)(4), and we need not address it further. Finally, there is no question under the evidence that Karns knowingly caused or attempted to cause physical harm to M.L. During the argument, he grabbed M.L. by her hair, causing pain, shoved and pushed her repeatedly, shoved her into the bathtub, where she struck her elbow, and pushed her against the wall with his hand on her neck, holding her against the wall. Tr. at p. 68-71. Karns did not claim at trial that the injuries were caused by some type of accident; his position was that M.L. made up the incident in order to avoid delay in evicting him from the premises. Tr. at p. 161. However, the visible injuries the police observed contradict this argument.

## IV. Conclusion

{¶ 52} Both of Karns's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.


Copies sent to:

Marcy A. Vonderwell
Adam James Stout
Hon. Michael A. Buckwalter